PEOPLE ex rel. SHIELDS v. SCANNELL, Fire Commissioner.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

MUNICIPAL CORPORATIONS—OFFICERS—UNION SOLDIERS — DISCHARGE — REINSTATEMENT—MANDAMUS.

    Laws 1898, c. 184, provides that, if positions held by honorably discharged soldiers shall be abolished, the incumbents shall be transferred to any branch of the service for duty in such position as they may be fitted to fill. Relator, an honorably discharged soldier, was employed as assistant secretary of the fire department, and on abolition of such office his services were dispensed with, though at the time there were other positions vacant in the department, the duties of which he was competent to perform. *Held,* that relator was entitled to mandamus requiring defendant to forthwith assign him to duty in such department like or similar to that performed by him at the time of his removal.

Appeal from special term, New York county.

Petition for mandamus by the people, on relation of John R. Shields, against John J. Scannell, as fire commissioner of the city of New York. From an order granting the writ (59 N. Y. Supp. 480), defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Theodore Connoly, for appellant.
C. J. G. Hall, for respondent.

INGRAHAM, J. This is an appeal from a final order granting a writ of mandamus requiring the respondent to forthwith restore the relator to duty in the public service in the fire department in the city of New York, and to assign him to duty like or similar to that performed by him as assistant secretary of the fire department of the city of New York at the time of his removal. The relator was an honorably discharged soldier of the United States army in the late Civil War, and on July 25, 1873, was appointed a clerk in the fire department of the city of New York, and continued in such employ down to April 1, 1898, at which time he was performing the duties of assistant secretary, having been appointed to that position May 16, 1892. On April 1, 1898, he received a notice from the fire commissioner, as follows:

    "The position of assistant secretary in this department, borough of Manhattan, is hereby abolished from 4 o'clock this p. m., and the services of John R. Shields, the incumbent thereof, no longer required."

By chapter 184 of the Laws of 1898 the veteran act was amended by adding the following provision:

"And in cities of the first class, if the position so held by such honorably discharged soldier, sailor or marine or volunteer fireman, shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier, sailor or marine or volunteer fireman holding the same position, shall not be discharged from the public service, but shall be transferred to any branch of said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor."

And it is alleged in this proceeding that the fire commissioner violated this provision of the statute by discharging the relator from the public service when he abolished the position of assistant secretary. The case came on for trial before the court at special term, when a trial by jury was waived, and the issue raised by the alternative writ and return thereto was tried before the judge at special term. By his decision he found that the relator was unlawfully discharged by the defendant from the position held by him; that such discharge was prohibited by the express terms of chapter 184 of the Laws of 1898, the relator being a veteran in the United States army in the Civil War; and he was directed to be reinstated in the public service. Upon the evidence it appeared that the services that were performed by the relator were mainly clerical, acting under the secretary; that it was his duty to prepare papers for the action of the board, to make the proper disposition of the papers of the board and prepare them for filing, to prepare forms of contracts preparatory to their going to the corporation counsel for approval, to prepare or edit the annual report to the mayor, prepare advertisements for contracts, examine returns or reports of officers in relation to firemen who were appointed on probation, and to prepare orders of removal and appointment. The salary of the relator was $3,000 a year. On the day of his removal, one Reilly was appointed purchasing agent, and one Graham, who prior to that time had been acting as purchasing agent, was sent for by the respondent, and was asked if he could not do much of the work that Shields, the relator, had been doing. Graham replied that he was familiar with it, and could, but that he did not want to have any position in that department at the expense of Mr. Shields. To that the respondent replied that Shields would have to go anyway. There was some little talk of his being a veteran. Immediately after the relator's removal, and upon the appointment of Reilly, the commissioner told Graham to prepare the form of contracts and advertisements, and to edit the annual report for the mayor,—services which had been performed by the relator,—and from that time on Graham ceased to perform any services as purchasing agent, and Graham performed part of the duties which had been before performed by the relator. Subsequently, and on the 6th or 8th day of June, 1898, one Anthony Eickhoff was appointed examiner of accounts of the department at a salary of $2,500 a year. It seems that he was created the head of a bureau of the accounting officers, which position was exempt from competitive examination. It is quite apparent, from a consideration of the services performed by these two officers, one appointed upon the day of the relator's

removal, and the other less than two months thereafter, that the services that were performed by them could have been performed with equal satisfaction to the public service by the relator. Graham was superseded as purchasing agent to perform a portion of the duties performed by the relator, and Reilly appointed in his place as purchasing agent, and, shortly afterwards, Eickhoff was appointed to perform duties which certainly could have been performed by the relator, and the salary of these two appointees was in excess of that paid to the relator. The commissioner, in his testimony, testified that the relator was a very good man, and had the ability to do the same work as fell upon Eickhoff; that he (the relator) had covered the same ground. Upon those facts, what was the duty of the fire commissioner, under this provision of the statute before cited? The law directed him that, if the position held by any honorably discharged soldier should become unnecessary, or be abolished for reasons of economy, or otherwise, the honorably discharged soldier holding the same should not be discharged from the public service, but should be transferred to any branch of the said service for duty in such position as he might be fitted to fill, receiving the same compensation therefor. This statute was binding upon the fire commissioner, and it was his duty to comply with it, and it is our duty to enforce it. He had no power "in good faith to violate the law" by displacing a veteran, and substituting another in his place. If the position of assistant secretary became unnecessary, and was to be abolished, the officer holding that position, being a veteran, was not to be discharged from the public service, providing there were other positions in the department the duties of which he could perform. That there were such positions appears from the fact that upon the day he was discharged Reilly was appointed, and shortly afterwards Eickhoff was appointed, and the result of the discharge of the relator appears simply to have been to shift the officers who performed certain duties, so that the relator was discharged, and Reilly and Eickhoff appointed to positions in the department. That this was in express violation of the provisions of the statute before cited is apparent. There is no question here of requiring the commissioner to create a vacancy to which the relator is to be appointed, unless it be to reinstate the relator in the position from which he was illegally removed in the place of those illegally appointed to supersede him. The fact that other persons were subsequently appointed to perform the duties which the relator had performed or could have performed, and that such appointment was in consequence of the relator's removal, is sufficient to justify the finding of the court that the removal was in violation of the provisions of the statute before referred to.

In re Breckenridge, 160 N. Y. 103, 54 N. E. 670, was an application for a peremptory writ of mandamus, and the application was denied because the relator had failed to show that any position had existed which he might fill where the compensation was the same. All that the court in that case held was that the "law is capable of a reasonable and perfectly fair construction, under which the veteran who loses his office through its abolition is not to be discharged from the public service if there is in any branch of that service a position with equal

emolument which he is qualified to fill"; that "their beneficent scope cannot be enlarged to accomplish a purpose which would work injustice, either to the municipality, in saddling upon it unnecessary officials, or to persons in office, whose only cause for removal would be that their places were wanted for veterans." In this case it is evident that the relator's position was wanted for others who were appointed to perform the duties that he had performed, or was capable of performing, and we think his removal was in violation of the provisions of the statute.

It follows that the order appealed from must be affirmed, with costs. All concur.