(63 App. Div. 249.)

PEOPLE ex rel. RODENBOUGH v. VOORHIS et al., Com'rs.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

OFFICERS—EX-SOLDIERS—CIVIL SERVICE—OFFICE DISCONTINUED—MANDAMUS.

Relator, an honorably discharged soldier, was superintendent of the general bureau of elections, with a salary of $6,000 per year, when that office was abolished by the charter of Greater New York, and defendant board created in place of the bureau. There is no similar office under the present board. When he brought mandamus to compel defendants to employ him, they had applied to the municipal civil service commission to classify the positions under the new law, and such classification had not been completed. It was not shown that any position had been created, not of a confidential nature, which relator was competent to fill, the salary of which equaled his former salary. Laws 1899, c. 370, § 21, provides that, if the position held by any honorably discharged soldier shall be abolished, he shall not be discharged from the service, but be transferred to any branch in such position as he may be fitted to fill, receiving the same compensation therefor. Held, that the application for mandamus was prematurely made.

Appeal from special term, New York county.

Application by the people, on the relation of Theophilus Rodenbough, for a writ of mandamus against John P. Voorhis and others, commissioners of

elections of the city of New York. Defendants appeal from an order directing the issue of a peremptory writ of mandamus against them, as the commissioners of elections, constituting the board of elections of the city of New York, requiring them and it to transfer or assign petitioner to any branch of the service under said board of elections for duty in such position as he may be fitted to fill, upon the same compensation as he received as superintendent of election; or, should there be no position in the service of the board, the reasonable compensation for which would be equal to that received by the petitioner as superintendent of elections, then to transfer or assign the petitioner to the office of chief clerk of the board of elections, to perform duties similar to the duties formerly performed by the chief clerk of the bureau of elections for the whole city of New York, or as a competent person to perform similar duties and act as an executive officer for the borough of Manhattan, or to perform duties similar to those of an auditor which the petitioner performed, together with the duties imposed by law upon him as superintendent of the bureau of elections; or to transfer or assign him as a competent person to take charge of the branch office in the borough of Brooklyn, or to any other position of like or similar importance, and to fix a reasonably proportionate compensation for such suitable duties as he may be required and fitted to perform therein; and awarding relator $50 costs. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

William B. Crowell, for appellants.
Clarence P. Moser, for respondent.

LAUGHLIN, J. The relator is an honorably discharged soldier of the Civil War, and was appointed, after a civil service examination, chief of the bureau of elections, on the 31st day of January, 1890. He continued to perform the duties of the office under successive administrations until the 27th day of January, 1898, when the position was abolished by the provisions of the Greater New York charter, whereupon he was appointed superintendent of the general bureau of elections by the police board, at a salary of $6,000 per annum. He accepted the appointment and fulfilled the duties of that office until the 13th day of March, 1901, when it was abolished by chapter 95 of the Laws of 1901, which established a board of elections for the city of New York, consisting of four commissioners, each of whose salaries was fixed by the act at $5,000 per annum. The order for the writ follows the prayer of relator's petition.

Chapter 95 of the Laws of 1901 authorizes the board of elections to provide a central office in the borough of Manhattan, and a suboffice in each other borough, and to appoint chief clerks, clerks, assistant clerks, and other necessary employés, to fix the number thereof, and to prescribe their salaries and duties. In his position as superintendent of elections the relator was, by the express provisions of the statute, the chief executive officer of the general bureau of elections, and charged with the execution of the provisions of the election law, and rules and regulations of the police board relating to said bureau. Under the present law (chapter 95 of the Laws of 1901) the duties of this nature are required to be performed by the commissioners of election. The commissioners of election have been appointed by the mayor, and have qualified and entered upon the

discharge of their duties. An affidavit made by the secretary of the municipal civil service commission, read in opposition to the motion, shows that there were 33 positions in the general bureau of elections immediately prior to the enactment of the law of 1901, and that a communication has been received by said commission from the new board of elections requesting a classification of the positions under the new law, and that the matter is under consideration, but that the positions have not been finally classified. It is provided in section 21 of chapter 370 of the Laws of 1899 (the state civil service law) that:

"In cities of the first class, if the position so held by any such honorably discharged soldier, sailor or marine, or volunteer fireman, shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier, sailor, or marine, or volunteer fireman holding the same shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor. * * * Nothing in this section shall be construed to apply to the position of private secretary or deputy of any official or department, or to any other person holding a strictly confidential relation to the appointing officer."

It is not shown that any position has been created under the new law which is not of a confidential nature, and which the relator is competent to fill, and the salary of which equals his salary as superintendent of elections. The application is therefore prematurely made, and the order for the peremptory writ of mandamus was erroneously granted. In re Breckenridge, 160 N. Y. 103, 54 N. E. 670. After the duties of the various employés of the new board shall have been prescribed, and the salaries shall have been fixed, it is evident that grave questions will arise as to the right of the relator to be transferred to a position under the board of elections. It appears that there are many other veterans who occupied subordinate positions under the former general bureau of elections who also make similar claims to be transferred. The relator, however, having made a demand upon the board for such transfer, whatever rights he may have in the premises to be transferred to that department will be preserved. But other steps may be required to preserve any rights that he may have to be transferred to any other department.

It follows that the order appealed from should be reversed, with costs. All concur.