(67 App. Div. 349.)

PRATT v. PHELAN, Commissioner of Public Works.

(Supreme Court, Appellate Division, Third Department. December 31, 1901.)

1. CIVIL SERVICE—VETERANS—PREFERENCE—DISCHARGE.
   The city of Troy constantly employed six assistant engineers at its main pumping station, and occasionally six more at an auxiliary station. Plaintiff, an honorably discharged soldier, being employed at the main station, was subsequently transferred to the auxiliary station, and, when work there became unnecessary, was discharged. *Held*, that under the veteran act (Laws 1884, c. 312), entitling veterans to be preferred as employés, he was entitled to reinstatement, as those not under the protection of the act should be first discharged.

2. SAME—CONSTITUTIONAL LAW—EMPLOYMENT.
   Laws 1898, c. 182, § 107, providing that the commissioner of public works of cities of the second class "shall appoint to hold office during his pleasure, a deputy and such other subordinates as may be prescribed," does not entitle the commissioner to discharge an employé in disregard of the veteran act, as such interpretation would be in opposition to the constitutional provision giving veterans preference in appointment and promotion.

3. SAME—STATUTES.
   Laws 1899, c. 370, §§ 20, 21, securing preference to veterans in employment, is part of the civil service laws of the state, and Laws 1898, c. 182, § 482, an act governing cities of the second class, provides that nothing therein shall affect the civil service. *Held*, that section 107,

giving the commissioner of public works power to appoint deputies and subordinates "to hold office during his pleasure," was subordinate to the civil service act, and the commissioner could not discharge a veteran in disregard of that act.

**4. SAME—REINSTATEMENT—KNOWLEDGE.**

That the commissioner did not know that the employé was a veteran when he discharged him did not affect the veteran's right to reinstatement.

**5. SAME—MANDAMUS—ALTERNATIVE WRIT.**

Where the answer to a petition for mandamus to compel relator's reinstatement in office puts in issue the allegation that relator is an honorably discharged veteran, and denies his discharge from employment, and certain allegations of bad faith in relator's removal, the relator is entitled to the alternative, and not the peremptory, writ.

Appeal from special term.

Mandamus by John G. Pratt against John Phelan, commissioner of public works of the city of Troy, to compel the relator's reinstatement as an assistant engineer. From an order refusing both a peremptory and an alternative writ, relator appeals. Reversed.

Argued before PARKER, P. J., and HOUGHTON, EDWARDS, SMITH, and CHASE, JJ.

Geo. E. Sands and M. D. Nolan, for appellant.

Thomas S. Fagan, for respondent.

PARKER, P. J. From the affidavits filed by the relator in this matter it appears: That in February, 1884, he was appointed, and had since up to January 22, 1900, been continuously employed as an assistant engineer at the main pumping station of the waterworks system of the city of Troy. That there were five other assistant engineers employed at such station, each of whom performed like duties and received the same compensation, viz., $75 per month, as the relator did. That such men worked in shifts of eight hours each, two of them working together in each shift. That the relator, when so appointed, was an honorably discharged soldier from the army of the United States, having served in the Union army during the war of the Rebellion. That in January, 1900, the village of Lansingburg was annexed to and became a part of the city of Troy, and its system of waterworks passed under the control of the commissioner of public works of that city. That in said village was a pumping station, which was used to assist and supplement the gravity system of works which was designed to, and usually did, supply that village with water. That it was in fact an "emergency station," used only during those portions of the year when the scarcity of rainfall reduced the natural supply and made the pumping of water necessary. That on the 22d of January, 1900, the defendant removed this relator to such "emergency station" from the permanent one, where he had been continually employed since 1884; and he there worked as an assistant engineer, with five others, until March 13th, when that station was closed because the regular gravity system became again sufficient to furnish the necessary water. His name was then taken from the pay rolls, and he was discharged. That the pumping station from which he was so removed in January has continued at all times since

to be operated, and is still in operation, and the man who succeeded to his place and work there is still employed in that same position. That such man is not a discharged Union soldier, nor is he, or any of the others there employed, entitled to any preference under the veteran act (Laws 1884, c. 312), so called. The defendant entered upon the duties of commissioner of public works under the new charter of the city of Troy on January 1, 1900, and it is not claimed that any charges were preferred against the relator, or that he was removed on account of any incapacity or misconduct whatever. That subsequently to his discharge the relator made application to the commissioner for reinstatement, claiming that he was such a discharged Union soldier, and exhibiting to him his proofs thereof. Upon the defendant's refusal to reinstate him, he commenced these proceedings for a mandamus requiring him to do so. The special term refused the writ, and from such order this appeal is taken.

Assuming that the foregoing statements are true, it would, in my opinion, follow that the relator should be reinstated to the position of assistant engineer, even though some other assistant engineer, not a veteran, had to be discharged. From such facts we have this situation presented: The city needs for constant employment at its main pumping station six assistant engineers, and occasionally at an auxiliary station six more. The work at each station is similar, the compensation the same, and evidently the men can be transferred and worked interchangeably at each. But, like clerks employed in the same department, those assistant engineers are all occupying the same position, and where, for any reason, it becomes necessary or economical to dispense with the services of either or any of them, under the provisions of the veteran's act the veteran is entitled to be preferred as an employé, and those not under the protection of that act are to be first discharged. This proposition seems to be distinctly settled by the decision in Stutzbach v. Coler, 168 N. Y. 416, 61 N. E. 697, and an extended discussion and analysis of the statute is unnecessary. I deem these several assistant engineers as being employés of the department of public works in the city of Troy, generally, and when, for any reason, that force becomes larger than is needed, the situation is exactly similar in principle to that passed upon in the Stutzbach Case, and hence is controlled by that case.

It is contended on the part of the defendant that this relator is not protected by the statute in question, because he had, by the present charter of the city of Troy, viz., Laws 1898, c. 182, been legislated out of his position; and that, therefore, his employment, under the provisions of section 107, was at the will of the commissioner of public works. That act, known as the "Act for the government of cities of the second class," became operative as to the city of Troy on January 1, 1900, and by section 107 it provides that the commissioner of public works "shall appoint, to hold office during his pleasure, a deputy and such other subordinates as may be prescribed by the board of estimate and apportionment." This, it is urged, removed from the relator whatever protection he might have previously had under the veteran act, and hereafter gives the commissioner the power to discharge any veteran he may thereafter employ, without

charges, and at his will. If the word "subordinates" can be held to include the relator and all other employés in that department, I cannot agree with the result which the defendant would deduce from that construction. The constitution, in terms, secures to the veteran a right to preference in appointment and promotion, which, in the Stutzbach Case, above cited, is said to include "employment" as well; and the interpretation and force which the defendant's attorney would give to such section 107 would be squarely in opposition to that provision. Moreover, sections 20 and 21 (Laws 1899, c. 370), which relate to veterans, and secure to them the preference above referred to, are a part of the civil service law of the state; and section 482 of the act under which Troy is now governed expressly provides that nothing therein contained shall be construed to affect any of the several acts, or parts of acts, to regulate and improve the civil service of the state of New York. Hence whatever power the commissioner gets under section 107 is, by section 482, made subordinate to the requirements of the civil service laws. If the employment in which the relator was engaged when the commissioner of public works entered upon his duties under the new charter had been a distinct office or employment, the duties of which were performed by the relator alone, and such office had been abolished, and its work abandoned, or turned over to some other office, then this case would have been similar to the Rochester Case, decided by Mr. Justice Davy, and to which we are referred. But evidently this relator was one of many employés engaged in the same duties, and each hired to perform work which was common to all. When economy required that the number of men so employed should be diminished, necessarily a selection must be made from among them all, and in that selection the statute secures to the veteran the right to be retained.

It is further objected that, because the commissioner did not know that the relator was a veteran when he was discharged, he is not now entitled to be reinstated. That objection is met and settled against the defendant by the decision in the Stutzbach Case.

Upon the record before us, however, it is not conceded that all of the above statements set forth in the moving affidavits are true. Thus the defendant, by answering affidavits, puts in issue the question whether the relator is an honorably discharged soldier within the provisions of the veteran's act; also denies that he was discharged, claiming that he was merely suspended. Moreover, the petitioner further charges that his removal to the emergency station was done in bad faith, and with the design of ultimately removing him. This is denied. Under this situation the relator is not entitled to a peremptory mandamus. Evidently the court must be informed as to what was actually done towards discharging the relator, and as to the truth of all the claims upon which he bases his right to reinstatement. But the notice accompanying the moving affidavits asked for an alternative writ in the event that the claims made in such affidavits were contradicted, and the order appealed from determines that he is entitled to neither. In this, I think, there was error. As shown above, if the facts, as claimed by the relator, existed, he was entitled to a mandamus to reinstate him; and, upon their being de-

nied, he was entitled to the alternative writ, in order that he might establish them.

It results that the order should be reversed, with $10 costs, and the application for an alternative writ granted.   All concur.

---

## WHITE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   January 7, 1902.)

1. RAILROADS—PASSING STATIONS—FAILURE TO SIGNAL AND SLOW UP—PERSONS NEAR TRACK—UNUSUAL PROJECTIONS—CONTRIBUTORY NEGLIGENCE.

On the day of the accident, plaintiff, a mail carrier, brought mail to defendant's north-bound passenger train, which was late. While waiting in the station, a whistle was heard, and the station agent remarked, "There comes your train," whereupon plaintiff went out towards the main track for the purpose of putting the mail on the supposed passenger train. It was broad daylight, but about 16 feet to the south freight cars standing on a siding obstructed his view, and as he stepped from the siding towards the main track he was struck by a snowplow of defendant, which projected over the track about 3 feet, 4 inches,—11 inches further than a passenger coach,—and which was passing at a rate of 40 miles an hour, without any slow up or signals for the station. Before coming within 3 feet of the main track, plaintiff could have seen past the freight cars a long distance south down the main track. Held, that plaintiff was guilty of contributory negligence.

2. SAME—REMARKS OF STATION AGENT—GUARANTY.

The remark by the station agent to plaintiff that his train was coming was not an assurance or guaranty that the approaching train was the north-bound passenger, but was merely an inference based upon the course of events, which plaintiff himself could have drawn as well as such agent.

Appeal from trial term, Oswego county.