In the Matter of the Application of JAMES E. JONES, Appellant, for a Peremptory Writ of Mandamus against WILLIAM R. WILLCOX, President of the Department of Parks of the City of New York, and Commissioner of Parks for the Boroughs of Manhattan and Richmond, Respondent.

*Abolition of the position of a veteran — when the incumbents of newly created positions are proper parties to mandamus proceedings for his reinstatement — when an alternative writ should issue where a peremptory one only is applied for — rights of the veteran where the position was abolished in bad faith — his rights where it was abolished in good faith — burden of proof as to the veteran's qualifications to hold another and similar position — constitutional question involved.*

An honorably discharged soldier of the Union army in the Civil war who had been appointed superintendent of small parks in the city of New York at a salary of $3,000 per annum, was notified by the commissioner of parks on April 30, 1902, that his position had been abolished and that his services were no longer required. The day after his discharge he notified the commissioner that he was a veteran, and that he claimed to be entitled to be transferred to some branch of the municipal civil service, pursuant to section 21 of the Civil Service Law (Laws of 1899, chap. 370, as amd. by Laws of 1902, chap. 270).

About the time the veteran was discharged the commissioner of parks created two positions, which were classified by the municipal civil service commission as non-competitive and exempt from civil service examination. After this classification had been approved by the State Board of Civil Service Commissioners the commissioner of parks appointed two persons to fill these positions to be known as assistant superintendents of parks. Thereupon the veteran made a motion for a peremptory writ of mandamus requiring the commis-

sioner of parks to reinstate him in the position from which he had been removed or to transfer him to some other position in the municipal civil service.

The moving papers alleged that the relator's position was abolished in bad faith, and also that the duties of the newly created positions were the same or similar to those which the relator had performed, and that the relator was fully qualified to perform the duties of either of the newly created positions. All of the facts were controverted by the opposing affidavits. The moving papers were served upon the incumbents of the newly created positions, but they did not appear in the proceeding.

Upon an appeal from an order denying the motion for a peremptory writ of mandamus it was

*Held,* that, so far as the relator sought to be reinstated in his original position, upon the ground that he had been removed therefrom in bad faith, the incumbents of the newly created positions were not necessary parties, but that, so far as the proceeding involved the right of the relator to be transferred to one of the newly created positions, the incumbents of such positions should have been made parties;

That, as the material allegations of fact contained in the moving papers had been controverted, the relator was not entitled to a peremptory writ of mandamus, but that, as it appeared that the lapse of time would be a bar to a new proceeding instituted by the relator, he should, if entitled thereto, have been awarded an alternative writ of mandamus, although he did not demand such a writ in his petition;

That, if the relator's position was abolished in bad faith and not in the interests of economy, he was entitled to be restored to such position;

That, if the relator's position had been abolished in good faith and the duties of the newly created positions were the same or similar to those which the relator had been performing, it was the duty of the park commissioner, under section 21 of the Civil Service Law, to transfer the relator to one of such positions.

That an issue of fact as to both these questions was presented by the petition and the opposing affidavits, and that the relator should have been granted an alternative writ of mandamus for the purpose of having such issues determined.

*Semble,* that, if it should appear that the relator's position was abolished in good faith and that the duties of neither of the newly created positions were the same or similar to those previously performed by the relator, the burden of showing that the relator was qualified to fill one of such positions would devolve upon him and that the burden of showing that he was not qualified did not rest upon the commissioner of parks.

*Quære,* if section 21 of the Civil Service Law were susceptible of a different construction. relative to the burden of proving the fitness of a veteran seeking to be transferred to another position, whether it would not be unconstitutional.

INGRAHAM, J., dissented.

APPEAL by the petitioner, James E. Jones, from an order of the Supreme Court, made at the New York Special Term and entered

in the office of the clerk of the county of New York on the 11th day of November, 1902, denying a motion for a peremptory writ of mandamus requiring the respondent to reinstate the petitioner as superintendent of small parks or to be transferred to the position of assistant superintendent of parks or to any branch of the municipal civil service for duty in such position as he may be fitted to fill.

*William Rumsey*, for the appellant.

*Theodore Connoly*, for the respondent.

LAUGHLIN, J. :

On the 6th day of April, 1898, the petitioner was appointed superintendent of small parks at a salary of $3,000 per annum. He continued to perform the duties of this position until the 30th day of April, 1902, when he received a notice in writing from the commissioner of public parks, boroughs of Manhattan and Richmond, that the position was abolished, to take effect that day, and his services were no longer required. The petitioner is an honorably discharged soldier of the Union army in the Civil war. The day after his discharge as superintendent of small parks, through his attorneys, he sent a written communication to the commissioner of parks, setting forth the fact that he was a veteran and that he claimed to be entitled to be transferred to some other branch of the municipal service, pursuant to the provisions of section 21 of the Civil Service Law, as amended by chapter 270 of the Laws of 1902. About the time he discharged the petitioner, the commissioner of parks created the positions of two assistant superintendents of parks, and they were classified on the 3d day of May, 1902, by the municipal civil service commission as non-competitive and exempt from civil service examination, and this classification was approved by the State Board of Civil Service Commissioners and became of force on the tenth of May. On the twenty-seventh day of May the commissioner of parks appointed William E. Weeks and Thomas F. Murphy to these positions. This proceeding was then instituted for the reinstatement or transfer of the petitioner. The moving papers were served on the appointees named, but they do not seem to have appeared. In so far as relief is sought upon the theory that the removal of the petitioner was illegal, that is, in bad faith, doubtless it was unneces-

sary to make these appointees parties for the relief sought would be reinstatement to the original position and not to the position held by either of them (*People ex rel. Tate* v. *Dalton*, 158 N. Y. 204; *Matter of Stutzbach* v. *Coler*, 168 id. 416); but on the questions arising concerning the right of the petitioner to be transferred to one of the newly created positions it was necessary to make the person appointed to the position a party, as has been done, for now the statutory remedy by mandamus in these cases takes the place of the writ of quo warranto, and a decision that the petitioner is entitled to the office necessarily ousts the occupant who has been made a party to the proceeding. (*People ex rel. Conlin* v. *Village of Dobbs Ferry*, 63 App. Div. 276; *People ex rel. Mesick* v. *Scannell*, Id. 243, and cases cited.)

The material allegations of the petition upon which the right of the petitioner to be reinstated, or to be transferred to some other position in the municipal civil service depends, were controverted, and, consequently, he was not entitled to a peremptory writ. Although an alternative writ was not demanded in the prayer of the petition, it is evident that if the petitioner be not awarded an alternative writ in this proceeding, the lapse of time would, doubtless, be a bar to a new proceeding; and, for that reason, if he be entitled to an alternative writ, it should have been awarded, notwithstanding it was not demanded.

The petitioner should not, in any event, have been dismissed, even if his position were lawfully abolished. His discharge was expressly forbidden by section 21 of the Civil Service Law (Laws of 1899, chap. 370), as amended by chapter 270 of the Laws of 1902, which became of force prior to the date of his discharge, at least, if there was any vacancy in any position of the municipal civil service which he was " fitted to fill, receiving the same compensation therefor." Even if there was no position to which he could be transferred, he was entitled, under section 1543 of the revised charter (Laws of 1901, chap. 466), to have his name certified to the municipal civil service commission for reinstatement in the same or a corresponding class of work. In no event could he be removed or discharged. At most he was only suspended by operation of law. This proceeding, however, is not brought to enforce his rights under section 1543 of the revised charter, but rather to obtain a reinstatement or

transfer under said section 21 of the Civil Service Law (as amd. by Laws of 1902, chap. 270).

The petition fairly charges, in effect, that the superintendent of parks acted in bad faith in abolishing the position held by the petitioner, and facts are disclosed by the record tending to support this charge. The affidavits presented in opposition to the motion tended to show that the abolishment of this position and the creation of the new positions were all in good faith and with a view to improve the public service. Under section 1543 of the Revised Greater New York charter, which in this respect is a substantial re-enactment of section 48 of the Consolidation Act (Laws of 1882, chap. 410), the commissioner of parks could doubtless, with the approval and consent of the board of estimate and apportionment, change the title or duties of an office or abolish it altogether and transfer the duties to another position or office. (*People ex rel. Dean* v. *Brookfield,* 1 App. Div. 68; *People ex rel. Wardrop* v. *Adams,* 51 Hun, 583; 22 N. Y. St. Repr. 856.) A position may be abolished in the interests of economy without giving notice to the occupant or affording him an opportunity to make any explanation notwithstanding the provisions of law forbidding a removal without notice and an opportunity to explain or without a formal hearing upon charges. (*People ex rel. Moloney* v. *Waring,* 7 App. Div. 204; *Matter of Breckenridge,* 160 N. Y. 103.) Prior to the statute forbidding the removal of certain classes of veterans and requiring their transfer where the position is abolished, it was well settled that while a position occupied by the veteran might be abolished in good faith and in the interests of economy, this might not be done in bad faith and as a mere pretext or subterfuge to remove the veteran and make a place for another. (*People ex rel. Shields* v. *Scannell,* 48 App. Div. 69; *People ex rel. Nutall* v. *Simis,* 18 id. 199; *People ex rel. Hartough* v. *Scannell,* 48 id. 445; affd., 163 N. Y. 599; *People ex rel. Nason* v. *Feitner,* 58 App. Div. 594. See, also, *People ex rel. Moloney* v. *Waring, supra; People ex rel. Reynolds* v. *Squier,* 10 App. Div. 415; *People ex rel. Corrigan* v. *Mayor,* 149 N. Y. 225; *People ex rel. Traphagen* v. *King,* 13 App. Div. 400; *People ex rel. Linnekin* v. *Ennis,* 18 id. 412; *Matter of Kelly,* 42 id. 283; *Matter of Breckenridge,* 160 N. Y. 103; *Matter of Kenny,* 52 App. Div. 385.) There is no reason

why this rule should not still obtain. The mere fact that the veteran is given a right to be transferred to any position in the municipal civil service for which he is fitted should not deprive him of the right to hold the position if it has been abolished in bad faith and not in the interests of economy. It is evident that in many instances there might be no position vacant for which the veteran was qualified, and it is also apparent that by a change of salaries or a consolidation of duties he might not be able to obtain a position at all, or one paying the same salary, and, manifestly, the interests of the veteran would not be fully protected in all cases by this statutory right to be transferred. On the moving papers and the replying affidavits a question of fact was presented as to whether the petitioner was removed and his office abolished in good faith. If, on the alternative writ of mandamus, this question should be resolved in favor of the petitioner, on evidence fairly overcoming the presumption of law that public officials have acted in good faith (*People ex rel. Nutall* v. *Simis, supra*), he will be entitled to be reinstated to the position formerly held by him and to receive the salary thereof.

Moreover, the petitioner shows that the duties of the newly created positions are the same or similar to those that he has been satisfactorily performing as superintendent of small parks, and he alleged that he is fully qualified to perform the duties of either of these new positions. This is also controverted by the respondent and, therefore, presents a question of fact which should be determined on an alternative writ. If the duties are the same or similar to those which the petitioner has been performing to the satisfaction of his superior, it was the express duty of the park commissioner, by section 21 of the Civil Service Law, as so amended, to transfer the petitioner to one of those positions upon their creation, assuming that he was removed and his former position was abolished in good faith. The fact that the salary of each of the new positions is less should be no obstacle, inasmuch as the petitioner appears to be willing to accept it. Upon such facts and to that extent at least, this statute is undoubtedly valid. (*Matter of Pratt* v. *Phelan*, 67 App. Div. 349. See, also, *People ex rel. Hoyt* v. *Trustees*, 19 id. 567; *Matter of Stutzbach* v. *Coler, supra*.)

It thus appears that there are two questions of fact to be deter-

mined on an alternative writ, and if either be determined in favor
of the petitioner he will be entitled to reinstatement or to be trans-
ferred to one of these new positions. An alternative writ may,
therefore, be of avail to the petitioner and it should have been
granted.

A question of more difficulty may arise if it shall appear that the
position was abolished in good faith, and that the duties of neither
of the newly created positions are the same or similar to those pre-
viously performed by the petitioner. Said section 21 of the Civil
Service Law, as thus amended, purports to entitle a veteran in such
case to be transferred to any position in any branch of the municipal
service for which he is qualified, whether the duties are the same
or similar to those he has previously held or not. There is no pro-
vision for a civil service examination in such case to determine his
qualifications for the other position to which he claims the right to
be transferred. It is manifest that veterans would not in all cases
be qualified to fill other positions, the duties of which are entirely
dissimilar, even though the salary might be the same or less. Of
course, he would be required to assert his rights and represent to
the appointing power that he possessed the necessary qualifications
before appealing to the courts, and when application should be made
to the courts he would be confined to his demand for a particular
transfer. The municipal civil service commission has exempted
these newly created positions from either a competitive or qualify-
ing examination, presumably upon the ground that in their opinion
an examination would be impracticable, for it is manifest that
neither of the positions is exempt by law, as neither is legislative
or that of a private secretary, cashier or deputy. (Civil Service
Law, § 21, as amd. by Laws of 1902, chap. 270; *Matter of
Shaughnessy* v. *Fornes*, 172 N. Y. 323.) The statute does not
declare that a veteran shall be entitled to such transfer as of
course; but only in case he is qualified to fill the position.
It is evident that in the case at bar his qualifications must be
passed upon by the appointing power. The learned counsel
for the appellant contends that the statute raises a presump-
tion that the veteran is qualified for any position, the compen-
sation of which is the same as that received by him in his
former position, and expressly places the burden of showing that

he is not qualified upon the appointing power. The statute is susceptible of this construction, but I am of the opinion that this was not the intention of the Legislature. It is unreasonable to suppose that the lawmakers would have cast this burden on the official clothed with the appointing power without making any provision for the applicant submitting to an examination to enable the official to determine the question. If this were the necessary construction of the statute its constitutionality might well be doubted. It will be observed that this right to a transfer in such case rests upon the statute alone, and is not conferred by the Constitution. (State Const. art. 5, § 9 ; *Matter of Stutzbach* v. *Coler, supra.*) The constitutional right of veterans is confined to preferences in appointments and promotions, and refers only to appointments and promotions made from an eligible civil service list after their qualifications have been ascertained. (*Sweet* v. *Partridge*, 66 App. Div. 309 ; State Const. art. 5, § 9 ; *Matter of Stutzbach* v. *Coler, supra.*) Statutory enactments regulating appointments, promotions and transfers in the municipal civil service must be construed with reference to section 2 of article 10 of the State Constitution, which provides that such appointments shall be made by officers of the municipality. The Legislature could not itself make the appointment, and yet we are asked to hold that it has attempted to create a presumption that the veteran is qualified without any examination, and to cast the burden upon the appointing power, filling any position for a transfer to which the veteran applies, to show that he is not so qualified. Would not this be an unlawful interference with the discretion and authority of the local appointing power, in whom alone, under the Constitution and the statutes enacted pursuant to the requirements thereof, is vested the responsibility of making the appointment? It has been held that it is not competent for the Legislature, in view of the section of the Constitution last cited, to require the appointing power to appoint the person standing highest on a civil service list, even after his qualifications have been determined by a civil service examination. (*People ex rel. Balcom* v. *Mosher*, 163 N. Y. 32.) Likewise, it has been held that it is not within the province of the Legislature to exempt veterans from competitive examination where the compensation of the position does not exceed four dollars per day, and where the Legislature, by requiring a civil

service examination for others not veterans, recognized the practicability of competitive examination for such positions. (*Matter of Keymer*, 148 N. Y. 219; *Matter of Sweeley*, 12 Misc. Rep. 174; affd., *sub nom. People ex rel. Sweeley* v. *Wilson*, 146 N. Y. 401.) The right to a transfer, although conferred in general terms, has been limited by the courts to a case where there is a vacancy to which the veteran may be transferred. (*Matter of Breckenridge*, *supra; People ex rel. Rodenbough* v. *Voorhis*, 63 App. Div. 249.) A construction which would render the statute of doubtful validity should be avoided. An examination of the history of this legislation, however, leads to the conclusion that the provision imposing the burden of proving incompetency or misconduct upon the person alleging the same (Civil Service Law, § 21, as amd. by Laws of 1902, chap. 270) relates only to removals, and was not intended to apply in cases of an alleged denial of a veteran's right to be transferred. It is unnecessary to go back further than chapter 821 of the Laws of 1896, which gave veterans a preference " for appointment, employment and promotion," prohibited their removal " except for incompetency or misconduct shown after a hearing upon due notice," gave them a right to review a removal by certiorari, and also a remedy by mandamus for a refusal to allow the preference, and provided that " the burden of proving incompetency or misconduct shall be upon the party alleging the same." At this time there was no provision authorizing the transfer of a veteran in case of the abolition of the position held by him; and clearly the burden of proof referred to in that statute related to cases of removal. The first statute relating to the transfer of veterans on the abolition of their positions was chapter 184 of the Laws of 1898. It provided that certain honorably discharged soldiers, sailors or marines and certain volunteer firemen should not be removed except for cause shown after a hearing; and that in cities of the first class, where the position " shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier, sailor or marine or volunteer fireman holding the same shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same, compensation therefor." There was no provision about

burden of proof in this act. In other respects the statutory law, so far as material to the present inquiry, remained the same until the enactment of the present Civil Service Law (Laws of 1899, chap. 370). Section 21 of that act, after providing that certain honorably discharged soldiers, sailors, marines and volunteer firemen should not be discharged from the public service "except for incompetency or misconduct shown after a hearing upon due notice, upon stated charges," incorporated the material provisions of said act of 1898 with reference to a transfer of said persons in case of the abolition of the position and as amended by chapter 270 of the Laws of 1902, expressly made it the duty "of all persons clothed with power of appointment to make such transfer effective." Then follows the sentence, "The burden of proving incompetency or misconduct shall be upon the person alleging the same." It will be observed that the words here used relating to the burden of proof correspond exactly with the words used in the clause relating to a removal after a hearing upon stated charges, and that they do not correspond with the words employed in the provision relating to a transfer, which are "fitted to fill." The clause relating to the burden of proof, therefore, should not be construed as applying to the provisions of the section relating to a transfer, not only for the reason that such construction would render the constitutionality of the statute doubtful, but also because it was manifestly not the intention of the Legislature. Where the position has been abolished in good faith and the occupant claims the right to be transferred to some other position the duties of which are not the same or similar, the burden should rest upon him of showing his qualifications and not upon the appointing power of showing the contrary. The Constitution (Art. 5, § 9) provides that appointments shall be made according to merit and fitness. Where the duties of the position are not the same or similar and the transfer thus practically becomes a new appointment there is room for argument that in view of this constitutional provision it is not only the right but the duty of the appointing power to select the person who, in his judgment, is the best qualified in those cases, of course, where, as here, the constitutional right of preference of the veteran does not exist. The reasoning in the opinion of the Court of Appeals in *Matter of Stutzbach* v. *Coler* (*supra*), although not

precisely in point, tends toward sustaining the constitutionality of the law.

These grave questions relating to the constitutionality of the statute may be eliminated by the findings upon the other questions or upon this should it be presented, and, in view of their far-reaching importance, they should not be finally decided by us now. Therefore, with these suggestions, we leave them open to be determined when the questions shall be directly and necessarily presented.

The case of *People ex rel. Mesick* v. *Scannell* (*supra*) is not in point. That related to a claim of a right to promotion and did not involve this statute, relating to transfers in case of the abolition of the position.

It follows, therefore, that the order should be reversed, with ten dollars costs and disbursements to the appellant, and an alternative writ should be issued in accordance with the suggestions contained in this opinion.

PATTERSON and HATCH, JJ., concurred; VAN BRUNT, P. J., concurred in result; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

I dissent from the reversal of this order and the awarding of an alternative writ of mandamus. The relator made an application for a peremptory writ upon affidavits. He asked for no alternative writ, but in the court below rested his right to be reinstated upon the facts appearing upon the application. The court denied his application upon these facts, and of this determination the prevailing opinion approves. I can see no reason why upon appeal, when the case was correctly decided below, the order should be reversed because if the relator had asked for an alternative writ in the first instance he would have been entitled to it. He made no such demand, but rested his right to be reinstated upon the facts as they appeared; and when properly defeated upon that application, we are not, I think, justified in reversing the order.

Order reversed, with ten dollars costs and disbursements, and alternative writ issued as directed in opinion.