James C. Cropsey, J.
This is an application for a writ of mandamus, peremptory or alternative, to secure the reinstatement of the relator in the Department of Parks for the Boroughs of Manhattan and Richmond. The relator is a veteran of the Civil War and for almost 14 years prior to January 1, 1916, had been assistant superintendent of parks. He received a salary of $2,500 a year. At the end of the year 1915, he was notified that Ms services were at an end because the Board of Estimate and the Board of Aldermen had not made provision in the 1916 budget for the position he had held. Relator demanded that he be reinstated in the department and assigned to the duty of district foreman or foreman mechanic or general foreman, which positions are in existence. During his term of service as assistant superintendent, he had performed all the duties now included in the work of those positions and was able to serve in any of those capacities.
The respondent claims that the position of assistant superintendent held by the relator was abolished for reasons of economy. Whether or not a saving was effected, we will refer to later, but relator contends that even if respondent’s claim were true, he, being a veteran of the Civil War, was entitled to be transferred to another position and that there are existing vacancies which he is qualified to fill.
No questions of fact are raised by the papers, at least none that are material,
*1032 In the budget for 1915, provision was made for these positions:
1 Assistant Superintendent, Salary, (position held by Relator) 1 General Foreman ” J[ 3? >3 33 1 5? ” 33 1 Foreman Mechanic, ” $2,500 1,800 1,800 1,800 1,800
Thus there were five of these positions paying total salaries of $9,700 a year. The position of foreman mechanic was apparently a new one, created for the first time by that budget.
In the budget for 1916, provision was made for these positions:
1 General Foreman, Salary, $1,800 1 District Park Foreman, 33 1,800 1 33 33 33 33 1,800 1 33 33 33 3 3 1,500 1 Foreman Mechanic, 33 1,800 1 33 33 33 1,500
While the position of assistant superintendent was abolished, four new positions were created by this budget. Two of these (those of district park foreman at $1,800) may be considered perhaps as being merely new names for the two positions of general foreman at the same salary, appearing in the 1915 budget. But the other two new positions (those of district park foreman at $1,500 and of foreman mechanic at $1,500) are entirely new and do not take the places of any positions in the 1915 budget, unless it be the position of assistant superintendent, which relator had held and which was abolished by the 1916 budget. •
The changes in the 1916 budget, so far as they relate to this proceeding, are as shown above, an increase in the number of positions from five to six and an increase in the total yearly salaries from $9,700 to $10,200. Thus the abolition of the relator’s position cannot be said to have been brought about in the interest of economy. That there were reductions in the total number of employees in the park department in 1916, and also in the total salaries as set forth by respondent, is beside the question here, for the fact remains that to do the character of work involved in this proceeding both the number of the positions and the total of salaries paid have been increased. The language of Judge Cardozo, in People ex rel. Davison v. Williams (213 N. Y. 130,134-135) is apposite: “ At the same time that the commissioner reduced the positions, he *1033 increased them. He had the right to reduce the number of laborers, and in so doing suspend the relator from duty; but if he increased the number at the same moment that he reduced it, his duty was to transfer the relator to the position thereby created. * * * The law will not permit him, for the purpose of ousting the relator and installing someone else, to reduce the positions with one hand and increase them with the other.”
It is not necessary to find that the elimination of the relator’s position was with a view to ridding the department of his services. He does not claim this in his papers, but relies upon section 22 of the Civil Service Law, which in part says: “If the position so held by any such honorably discharged soldier, sailor or marine or volunteer fireman shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier, sailor or marine or volunteer fireman holding the same shall not be discharged from the public service but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor, and it is hereby made the duty of all persons clothed with power of appointment to make such transfer effective.”
The respondent’s papers do not make clear the real reason for abolishing the relator’s position, though the creation of new positions concurrently with its elimination is very suggestive of the purpose. So too is the fact that in June, 1915, when Charles Piper was temporarily appointed to the position of foreman mechanic, created by the budget for that year, he was given the work the relator had been doing for a number of years, and relator was put at other work; and then at the end of that year relator’s position was abolished. Piper is still performing the same work. It is true this change was made in 1915, while relator was still in service, but it is significant. It was the forerunner of the abolition of relator’s position.
It is also true that the respondent asserts that “no one has been appointed to the position formerly occupied by the relator or to do the work which he formerly performed.” But this statement can mean only that no one has been appointed to do the work the relator performed just prior to the time his position was abolished. It cannot mean that no one has been appointed to do any of the work the relator performed during his service as assistant superintendent. The moving papers show that for two years after his appointment (1902 to 1904) the relator was in charge of the Speedway and bridle paths, that thereafter for about five years (1904 to 1909) he was in charge of all the parks in Manhattan Borough, south of 59th *1034 Street, that then for about six years (1909 to June 1, 1915) he was in charge of the mechanics in the repair shops, and from then till December 31, 1915, he was in charge of all parks in Manhattan Borough, north of 110th Street. All of these allegations are admitted, as none of them is denied by respondent except the last one, namely as to the work relator did from June 1, 1915, to December 31, 1915; and as to this, respondent says the relator visited the parks in the district stated and supervised “ to a certain extent ’ ’ the work in them.
Piper was appointed in June, 1915, as foreman mechanic and put in charge of the mechanics in the repair shops, work which the relator was then performing. In March, 1916, respondent appointed DuBois to the position of foreman mechanic at $1,500, one of the new positions created when relator’s position was abolished; and respondent says in his affidavit that he is about to fill the position of district park foreman at $1,500, another new position created at the same time. The work of these positions had been performed by relator, so persons have been appointed to new positions created when relator’s place was abolished, and now are doing work he formerly did.
A similar situation existed in People ex rel. Shields v. Scannell (48 App. Div. 69), where it was held that the employee had been improperly removed. The court said (pp. 72-73): “ If the position of assistant secretary became unnecessary and was to be abolished, the officer holding that position, being a veteran, was not to be discharged from the public service, providing there were other positions in the department the duties of which he could perform. That there were such positions appears from the fact that, upon the day he was discharged, Beilly was appointed and shortly afterwards Eickhoff was appointed; and the result of the discharge of the relator appears simply to have been to shift the officers who performed certain duties so that the relator was discharged and Beilly and Eickhoff appointed to positions in the department.”
In Matter of Jones v. Willcox (80 App. Div. 167, 172), it is said: “If the duties are the same or similar to those which the petitioner has been performing to the satisfaction of his superior, it was the express duty of the park commissioner, by section 21 of the Civil Service Law, as so amended, to transfer the petitioner to one of those positions upon their creation, assuming that he was removed and his former position was abolished in good faith.”
But even though no one had been appointed to do any of the relator’s work, he claims that there are vacant positions in the department which he is competent to fill and that he should *1035 have been transferred to one of them. It has been noted that the position of district park foreman at $1,500 is vacant, and besides the position of foreman mechanic at $1,800 is only temporarily filled. That is the position held by Charles Piper, who was appointed to it in June, 1915, taking relator’s work, but that appointment was only temporary, as respondent’s papers show, and has never been made permanent. The name of the position has been changed recently to “ General Foreman (Shops) ”.
Relator is qualified to fill either of those positions. He alleges that he performed while he was assistant superintendent all the duties now covered by those positions, that no charges of incompetency or misconduct were ever made against him, and that he is alóle to serve in either position. These allegations are not denied. There is a denial of relator’s assertion that he “by reason of his service in his said capacity as Assistant Superintendent of Parks is duly qualified to fill any of the aforesaid positions ”, but this is not a denial of relator’s competency; it is merely a denial that “ by reason of his service ” he is qualified. Further this portion of relator’s affidavit which is denied as stated, relates to more positions than the two we have last mentioned, and hence a denial of his assertion that he was qualified to fill “ any ” of them is not a denial of his fitness to fill either of the two in question.
The respondent’s affidavit does say that “ the positions of General Foreman (Shops) and Foreman Mechanic should be filled by practical mechanics of a high order of skill ” and that “ the relator is not such a man ”, but this is not saying that the relator is not competent to fill those positions. It is merely stating an ideal type of man for the positions according to the respondent’s opinion. Even if the relator is not the best qualified man for the position, so long as he is “ fitted to fill ” the position he should have been transferred to it when his place was abolished (Civil Service Law, § 22; Matter of Stutzbach v. Coler, 168 N. Y. 416, 420).
The burden of showing his fitness to fill the existing positions is upon the relator (Matter of Breckenridge, 160 N. Y. 103; Matter of Jones v. Willcox, 80 App. Div. 167, supra); he has done that, and his assertions are not disputed.
Though there are vacant positions which relator is capable of filling, it is claimed he cannot be put into any of them because they are in the competitive class of the civil service and he has not qualified for them by examination and is not upon an eligible list. The position of assistant superintendent held by the relator was in the exempt class. The positions of general *1036 foreman (shops) and district park foreman are in the competitive class. It is claimed by relator that he is entitled to be transferred from his old position to one of the new ones, notwithstanding they are in different classes, because of the provision in section 14 of the Civil Service Law that ‘ ‘ no person shall be transferred to, or assigned to perform the duties of, any position subject to competitive examination, unless he shall have previously passed an open competitive examination equivalent to that required for such position, or unless he shall have served with fidelity for at least three years in a similar position. ’ ’ But the provisions of section 16 clearly show that no mere length of service in the exempt class is sufficient to justify a transfer to another position in the competitive class (Collier on Civil Service, pp. 98-103).
Whatever right relator has to be transferred depends upon the provisions of the Constitution and of section 22 of the Civil Service Law, which has been quoted. So the question is whether a position in the exempt class, held by a Civil War veteran can be abolished and the relator dropped from the service, and at the same time new positions can be created, which are in the competitive class only because of the failure of the Civil Service Commission to make them exempt, and then the veteran be denied the right to be transferred to one of the new places, although he is competent to perform its duties.
If the position of assistant superintendent had not been abolished and instead the Civil Service Commission had placed it in the competitive class, as it had the power to do, the relator would have continued to hold that position, and so he would have obtained a position in the competitive class without having been on an eligible list and without having taken any examination. This would have resulted from the mere fact that he was holding the exempt position at the time it was put into the competitive class. So if the new position which was created was the same as the old one which was abolished, the same result should follow, and the holder of the old position should be entitled to the new one. Such a method of getting rid of a veteran should not be permitted, for he is protected against removal except for cause, even from exempt positions (People ex rel. Hoefle v. Cahill, 188 N. Y. 489; Matter of Seeley v. Stevens, 190 N. Y. 158).
The giving of a different name to the new position should make no difference, nor should the changing of some of its duties. The head of a department should not be permitted to abolish a position and divide its duties among a number of positions, some of them newly created at the time the old posi *1037 tion is abolished, and then claim that no position similar to the old one exists. This would be a subterfuge which the courts should not countenance.
The head of a department is not obliged to discharge a person who is not a veteran to make a place for a veteran whose position has been abolished (Matter of Breckenridge, 160 N. Y. 103 supra; People ex. rel. Chappel v. Lindenthal, 173 N. Y. 524), but he is obliged to transfer such a veteran to any position that is vacant, which he is fitted to fill, receiving the same salary (Civil Service Law, § 22; People ex rel. Shields v. Scannell, supra, 48 App. Div. 69; in Matter of Jones v. Willcox, 80 App. Div. 167, 170, supra).
The provision of the law is unqualified. When a veteran’s position is abolished, he “ shall not be discharged from the public service”; instead he “shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill”; and the statute expressly makes it “ the duty of all persons clothed with power of appointment to make such transfer effective ”. (Civil Service Law, § 22.) The Constitution of the State (art. V, § 9 [now § 6]) gives veterans of the Civil War preference in appointment and promotion. The provisions of section 22 of the Civil Service Law which we have been discussing is in line with this constitutional mandate. It was the intention of both the Constitution and the statute to give substantial protection, as well as preference, to Civil War veterans.
When the position (exempt or competitive) held by a Civil War veteran has been abolished and a new position created, the duties of which come within those of the position he had held, and he is competent to fill the new position, he plainly is entitled to be transferred to it. If the new position was in the exempt class, the transfer unquestionably would have to be made. The corporation counsel’s brief does not gainsay this. But it is urged that because the new position is in the competitive class, that result cannot follow. As we have noticed, the new position is in the competitive class only because all positions except a few enumerated in the statute are in that class, unless the commission provides otherwise. Thus upon the establishment of a new position it is classified as competitive without any action by the commission.
If the abolition of a position in the exempt class and the creation of a new one which automatically enters the competitive class can deprive a veteran who held the former of the right to be transferred to the latter, the provision of the statute in question is practically valueless. It would afford no real *1038 protection to veterans. They could be thus relieved of their positions and be without redress unless they could establish that the appointing power acted in bad faith. The statute was intended to keep a veteran in the public service when he was qualified, even though Ms position were abolished in good faith. It would not have that effect if respondent’s contention prevails. The courts should see that the laws relating to veterans do in fact work out the benefits for them that are plainly intended, and should be keen to thwart all attempts to circumvent them. These laws must not be made meaningless by an act of subterfuge.
It is admitted that the work of the positions of general foreman (shops) and district park foreman was a part of the work done by the relator during a part of the time he was assistant superintendent and that no complaints of incompetency were made against him; and that he is now able to fill those positions is also admitted. To refuse to transfer him to one of them, is to nullify the plain mandate of the Constitution and statute.
The case of People ex rel. Kelly v. Milliken (140 App. Div. 762, affd. 201 N. Y. 545) is not an authority against the relator’s contention. In that case the employee who was denied a transfer from the exempt to the competitive class was not a veteran, and further his position had not been abolished and a new one created at the same time.
The lack of sincerity in the respondent’s position is apparent upon the face of his own papers. While he claims that relator could not be transferred because he was not on an eligible list and had not passed a competitive examination, it is shown that the position of general foreman (shops) at $1,800 is temporarily filled by the appointment of Charles Piper, although he has never passed such an examination or qualified for the place. Piper was appointed temporarily in June, 1915, pending the establishment of an eligible list, and apparently is still holding the position, although the rules of the Municipal Civil Service Commission provide that such a provisional appointment “ shall not continue * * * for a longer period in any case than two months; nor shall successive provisional appointments be made to the same position under this provision ’ ’. And no examination for the establishment of an eligible list has yet been held, although the same rules provide that it shall be had “ not later than three weeks from the date of such provisional appointment ”. At the time respondent’s affidavit was verified nearly a year had elapsed since Piper was temporarily appointed, and apparently he had held the position all that time. Why not the relator?
*1039 The only remaining question is as to the position to which the relator should be transferred and the question of salary. He is entitled to have either of the two positions. The temporary appointment of Piper to one of them does not affect the question. Nor was it necessary to make him a party to this proceeding (People ex rel. Mesick v. Scannell, 63 App. Div. 243, 247). In the absence of bad faith, the respondent could have reduced the relator’s salary (Matter of Rudd v. Cropsey, 159 App. Div. 275), and as respondent’s good faith here is not challenged by relator, the salaries fixed for each of the positions in question must be deemed adequate and proper, and the transfer must be at the salary thus provided.
All the points raised in respondent’s brief have been discussed.
A peremptory writ will issue, with $50 costs to the relator.
Settle order and writ on notice.