(85 App. Div. 407.)

PEOPLE ex rel. LEHMAIER v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. MANDAMUS—TO RAILROAD COMPANY—RELATOR.
    The public right to have street railway companies comply with the
    law by giving transfers cannot be enforced by mandamus on the relation
    of a private individual, the Railroad Law, Laws 1890, p. 129, c. 565,
    § 157, empowering the railroad commission to enforce compliance by
    railroad companies with the provisions of their charters.

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of James S. Lehmaier, against the Interurban Street Railway Company. From an order denying application for a peremptory writ, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward B. Whitney, for appellant.
Charles F. Brown, for respondent.

INGRAHAM, J. The relator applied to the Special Term for a mandamus requiring the defendant to carry for one single fare of five cents any passenger desiring to make one continuous trip between any point upon its Eighth avenue line and any point upon its 125th street and Amsterdam avenue line, and upon demand and without extra charge to give to each passenger upon either of said lines paying one single fare a transfer operative at the intersection of said lines at the corner of Eighth avenue and 125th street, in the borough of Manhattan, entitling such passenger to one continuous trip as aforesaid. The court denied that application upon the ground that the remedies provided for in the statute which imposed this duty upon the defendant were legal remedies which afforded adequate relief to aggrieved passengers upon the defendant's road, and in such a case resort to the extraordinary remedy of mandamus would not be permitted; and, while a mandamus may be issued in a proper case to compel the doing of a specific act, it may not be invoked to compel a general course of conduct for a long series of continuous acts.

The affidavit upon which the application was made states that the relator is a citizen and resident of the city of New York; that the defendant is a domestic corporation, organized under the provisions of section 3 of the stock corporation law (chapter 688, p. 1825, Laws 1892); that on the 8th day of April, 1902, the Metropolitan Street Railway Company, a domestic street surface railroad corporation operating certain lines of street railway in the city of New York, which includes a line upon Eighth avenue from Canal street to the Harlem river, and a line in 125th street and Manhattan street in the city of New York, the two roads intersecting at the corner of Eighth avenue and 125th street, leased its railroad, including the Eighth avenue line and the 125th street line, to the defendant corporation for the term of 999 years, to be used, maintained, and operated by the said Interurban Company, subject to the various burdens, obligations, and duties under which they were held by the Metropolitan Company; that prior to

said lease the Metropolitan Company operated these two lines of railroad, and since the said lease the defendant "has refused and does refuse to carry passengers desiring to make one continuous trip between any point upon the 125th street and Amsterdam avenue line and any point on the Eighth avenue line for one single fare, has refused and does refuse upon demand and without extra charge to give to each passenger paying one single fare a transfer entitling such passenger to such continuous trip, but demands and collects two fares of five cents each therefor, although said lines of railroad intersect at the corner of Eighth avenue and 125th street, in the borough of Manhattan. The single fare charged upon all the lines operated under said Interurban lease is five cents."

There is no allegation that the relator has applied for or been refused a continuous ride upon these two lines mentioned, for a single fare; nor is the application to enforce any individual right of the relator. He seeks by this proceeding to compel the defendant to comply with an obligation, imposed upon it by the general law of the state, to afford certain specified facilities to all persons desiring transportation upon the railroads operated by the defendant. This writ is applied for under section 1994 of the Code of Civil Procedure. That section provides that "a state writ must be issued in behalf of the people of the state; but where it is awarded upon the application of a private person it must show that it was issued upon the relation of that person." Section 2070 of the Code provides that "a peremptory writ of mandamus may be issued, in the first instance, where the applicant's right to the mandamus depends only upon questions of law, and notice of the application has been given  *  *  *  to the corporation  *  *  *  to which or to whom it is directed.  *  *  *  In such case, the application must be founded upon affidavits, or other written proofs, a copy of which must be served with the notice or order to show cause."

The right of the people, through the Attorney General, or the district attorney of the county, to make this application, is not presented. To entitle the relator to this relief, it must appear from his affidavit that upon the facts which are not disputed he, as an individual, is entitled as a matter of law to the relief for which he asks. The relator, so far as appears, has been denied no right to which he is entitled. He seeks to enforce in this proceeding the right that the people have to require the defendant to obey the law under which it exercises certain franchises in the city of New York. Whether or not the defendant should comply with these provisions of law is generally a question for the state to determine, and not for an individual, and the statute which imposes this obligation provides the method of its enforcement. By the railroad law (chapter 565, page 1082, Laws 1890), there is constituted a board of railroad commissioners, who are required to examine railways, and keep informed as to their condition and of the manner in which they are operated, for the security and accommodation of the public, and to enforce a compliance with the provisions of their charters (section 157, p. 1129); and if in the judgment of the board it shall appear that any railroad corporation has violated any constitutional provision or law, or has neglected in any respect to com-

ply with the terms of the law by which it was created, or has refused to comply with the provisions of any law, or with any recommendation of the board, it shall give notice thereof in writing to the corporation; and if the violation, neglect, or refusal is continued after such notice, the board may forthwith present the matter to the Attorney General, who shall take such proceedings thereon as may be necessary for the protection of the public interests. Section 162, page 1131, provides that the Supreme Court, at Special Term, shall have power and discretion, in all cases of decisions and recommendations of the board which are just and reasonable, to compel a compliance therewith by mandamus, subject to an appeal to the General Term and to the Court of Appeals. Ample provision is thus made for the enforcement of the obligations imposed upon railroad corporations by the railroad commissioners, and the Attorney General on behalf of the people of the state.

There can be no doubt but that the people of the state have the right to call corporations to account for a failure to exercise their franchises, or to comply with the provisions of law which impose a duty or obligation upon the corporation accepting a public franchise. This question was examined in People v. N. Y. Cen. & Hud. Riv. R. R. Co., 28 Hun, 543, and the opinion in that case has been recognized and followed by the courts of this state, but it was the Attorney General representing the state who instituted that proceeding. As was said by the presiding justice in that case, the state—

"Is not bound to inquire whether some one or more of its citizens has not thereby received a special injury for which he may recover damages in his private suit. Such an injury wounds the sovereignty of the state, and thereby, in a sense, injures the entire body politic. The state, in such a case as this, has no other adequate remedy. It may proceed, it is true, to annul the corporation, as has been held in many cases where corporations had neglected public duties. * * * But that remedy is not adequate, for it only destroys functions where the public interests require their continued existence and enforcement. It has, therefore, an election which of these remedies to pursue. * * * Undoubtedly, a sound discretion is vested in its law officer to decide whether the exigency is such as to call for the use of either remedy, as it is ultimately for the court to judge whether the elected remedy should be applied. But upon the question of proper and of sufficient legal injury to justify its use, where the corporation neglects or refuses to exercise its franchises or perform its duties, there seems to us no reason to doubt."

This duty to enforce the performance by the railroad corporations of the obligations imposed upon them having been imposed upon the railroad commissioners and the Attorney General, with a discretion as to the method and time of the enforcement of such obligations, the question is presented whether a private individual, who has been denied no right to which he is entitled, can, in the name of the people of the state, ask the court to enforce the law applicable to railroad corporations by mandamus. I know of no case in which this court or the Court of Appeals has determined that a private individual can thus usurp the powers vested in the Attorney General, and institute a proceeding in the name of the people of the state, where he alleges no private right that has been refused, and denied no right to which he was entitled. The case of People ex rel. Case v. Collins, 19 Wend. 56,

has been cited to support this principle.  In that case Judge Cowen says:

"It is a general rule that the relator must show an interest or title to interfere.  If he does not, it seems to be an objection even on error. * * * Most of the cases respect private or corporate rights.  Courts or officers or corporations are to be put in motion with a view to enforce some matter of private interest.  In such cases the title to relief at the suit of the relator must appear, and he should present himself as a party; otherwise a mere stranger might obtain a mandamus officiously, and for purposes not at all desirable to the real party.  In matters of mere public right, however, it is otherwise.  Here the people are the real party, as in the other case they are the nominal.  Yet it is well known that they cannot act except through individual information by their Attorney General or some private person."

In that case the question was whether public officers should open and work a highway which had been laid out by the Legislature, and the right to apply for a mandamus was put upon the ground that "the wrongful refusal of the officers to act is no more the concern of one citizen than another, like many other public offenses.  It is at least the right, if not the duty, of every citizen to interfere, and see that a public offense be properly pursued and punished, and that a public grievance be remedied."

In People ex rel. Sherwood v. Board of Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646, the distinction between an application for a mandamus made on behalf of a private person as relator and one made on behalf of the state is considered.  It is there said:

"This cannot be treated as in any sense a proceeding on behalf of the people.  Nor can it by amendment be turned into such a proceeding.  A writ of mandamus on behalf of the people in their sovereign capacity can be awarded only upon the application of the Attorney General, or some District Attorney, and the indorsement upon the writ must show that it was issued upon such application.  Code, § 1993.  And in such a case the name of no person need appear as relator in the proceeding.  Here the writ was awarded upon the application of Sherwood, a private person, and he appears as relator.  Id. § 1994.  In such a case the proceeding is purely one to enforce a civil remedy, and the people are present merely as a formal party, and their presence is due to the survival of a form which has long since ceased to have any significance or utility.  The real party in interest is the relator in such a case, and, if he should die, the proceeding would abate. We need not, therefore, now determine what this court would do if the mandamus in this proceeding had been awarded upon the application of the people through some officer authorized to represent them."

And the court refused to award a mandamus upon the ground that the relator, as an individual, had not shown a right to the relief, in the face of a dissenting opinion which insisted that:

"Inasmuch as the people themselves are the plaintiffs in a proceeding by mandamus, it is not of vital importance who the relator should be, so long as he does not officiously intermeddle in a matter with which he has no concern.  The office which the relator performs is merely the instituting a proceeding in the name of the people, and for the general benefit.  The rule, therefore, as it is sometimes stated, that a relator in a writ of mandamus must show an individual right to the thing asked, must be taken to apply to cases where an individual interest is alone involved, and not to cases in which the interest is common to the whole community."

In People v. R. W. & O. R. R. Co., 103 N. Y. 95, 8 N. E. 369, this distinction between the writ applied for by the Attorney General on

behalf of the people, which could be issued only to subserve the public interests, and a writ issued on the relation of a private individual to protect or enforce a private right, was applied. There the court say:

"As this writ was applied for by the Attorney General on behalf of the people, it must be assumed that it was issued only to subserve a public interest and to protect a public right. If private interests only were involved, the application for the writ by the Attorney General on behalf of the people was not proper. In that case it should have been applied for by the private parties interested, who should have been relators."

We have not overlooked the cases to which the learned counsel for the relator calls our attention. He bases the right of the relator to thus mandamus upon "the long-settled rule in this state, as in the greater number of other states, in the federal courts, and in England, that, to protect a public right, any citizen may appear as relator"; but this public right is the right in the public streets and highways, which was under the control of public officers, and other public rights of that character. Such was the case of the People ex rel. Pumpyansky v. Keating, 168 N. Y. 390, 61 N. E. 637, where the court say:

"We agree with the Appellate Division that the relator is entitled to maintain this proceeding as a citizen, he seeking to enforce a right in which the general public is interested, to wit, that the streets of the city shall remain unobstructed and unencumbered."

This public right is one that exists in favor of every individual to have certain public officers perform a duty imposed upon them of protecting the rights of the public; and in such a case there is no doubt of the right of any one entitled to the use of the streets to apply to compel the public officers to perform the duty imposed upon them. The obligation of a corporation to comply with the laws of the state from which it received its corporate franchise is quite different from this duty that is imposed upon public officers for the protection of the rights of the public in public streets and avenues. It is the people collectively who have granted the franchise or corporate existence that have the right to determine and to enforce the obligations imposed upon the corporation; and where provision is made in the statute creating the obligation for a proceeding by public officers to enforce it, who are vested with a discretion as to the time and method by which it shall be enforced, it would seem to follow that the application to enforce the provisions of the statute must be made in the manner provided in the statute, and that an individual who has no other interest in the enforcement of the statute except that of one of the people of the state at large has no right to apply to the court for a mandamus compelling the corporation to perform the duties imposed upon it. To protect the individual, the statute imposed upon the corporation a penalty for a violation of his rights; and any person who has been refused a transfer is given the right to recover a penalty, and that right has been insisted upon and enforced, as appears by the affidavit upon which this application was made. The statute, therefore, provides an ample remedy for a violation of its provisions. It gives to each person injured by such a violation a right to recover a penalty of $50 for each refusal of the corporation to give a continuous passage, and provides for the enforcement of this obligation by the railroad com-

missioners and the Attorney General. It would seem to follow that a private individual has no right to compel the defendant by mandamus to issue these transfers.

For these reasons, without passing upon the other questions presented, we think the order appealed from should be affirmed, with costs. All concur.