PEOPLE ex rel. MURPHY v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, First Department. January 15, 1909.)

1. MUNICIPAL CORPORATIONS (§ 67*)—CIVIL SERVICE RULES—AMENDMENT.

It is competent for the Legislature to amend or repeal expressly or by implication and to override the civil service law and the rules regulating appointments and promotions in the civil service of the state and in the political divisions thereof, provided such legislation does not contravene Const. art. 5, § 9, requiring that both appointments and promotions in the civil service shall be made according to merit and fitness to be ascertained so far as practicable by examinations, which so far as practicable shall be competitive.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 161, 162; Dec. Dig. § 67.*]

2. MUNICIPAL CORPORATIONS (§ 180*)—TELEGRAPH OPERATORS.

Revised Charter of Greater New York (Laws 1901, p. 118, c. 466), § 276, as amended so as to provide that telegraph operators in the telegraph bureau should be members of the police force, and giving them the rank or title of lieutenant of police, did not apply to patrolmen temporarily assigned to duty in the telegraph bureau.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 449; Dec. Dig. § 180.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Application by the People, on the relation of Francis C. Murphy, for a peremptory writ of mandamus against Theodore A. Bingham, as Police Commissioner of the City of New York. From an order denying the writ, petitioner appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

J. Grattan MacMahon, for appellant.

Theodore Connoly (Thomas F. Noonan, on the brief), for respondent.

LAUGHLIN, J. The application was for a peremptory writ of mandamus to compel the respondent, as police commissioner of the city of New York, to recognize the petitioner as a telegraph operator with the rank and compensation of lieutenant of police from the 16th day of April, 1907, and to accord to him all the rights, privileges, and emoluments of the position and grade of lieutenant of police.

On the 11th day of April, 1896, after passing a civil service examination, petitioner was duly appointed a patrolman on the police force of the city of New York. After the incorporation of Greater New York and on the 27th day of June, 1900, he was, by an order in writing made by the then chief of police, duly transferred to the central office squad in the borough of Manhattan, and by the same order detailed or assigned to duty in the telegraph bureau, which has since been designated "Bureau of Electrical Service." This detail or assignment was in accordance with a practice sanctioned by rule 10H of the rules and regulations of the police department, which provided as follows:

"The force of the telegraph bureau shall consist of superintendent of police telegraph, assistant superintendent of police telegraph, chief lineman, linemen and battery men, and members of the police force duly assigned thereto, who shall wear such uniform and insignia of office as may be prescribed by the police commissioner."

The claim of the petitioner is that the police force was reorganized by chapter 160, p. 209, of the Laws of 1907, which, among other things, amended section 276 of the Revised Charter of Greater New York (Laws 1901, p. 118, c. 466) by declaring that telegraph operators should have the rank of lieutenants of police, and that as he was then serving in the telegraph bureau under said detail, and had been for about seven years, this constituted him a permanent member of the telegraph force with the rank and salary of lieutenant. The petitioner was not required, under this detail or assignment, to perform duties calling for technical knowledge or special skill. It appears by the affidavit of respondent, which must, for the purpose of this appeal, be accepted as true, that petitioner was not required to send or receive messages by telegraphy, and that he merely operated the telephone switchboard, making connections in answer to telephone calls. The grade of sergeant intervenes between that of patrolman and lieutenant of police, and the petitioner never passed a civil service examination for promotion from patrolman to sergeant or to telegraph operator or lieutenant. It appears that the positions of sergeant and lieutenant

of police were classified in the municipal civil service as competitive at the time chapter 160, p. 209, of the Laws of 1907, became in force, although the office of lieutenant did not come into actual existence until that time; but there was no eligible list of lieutenants. Neither the official title nor rank of the petitioner has ever been changed on the records of the department. He apparently accepted the detail to the telegraph bureau without complaint and has acquiesced therein ever since without protest, receiving and receipting for his salary as patrolman, and bearing that rank and not the rank of sergeant, which was borne by all other members of the telegraph bureau other than patrolmen so detailed.

The learned counsel for appellant, to succeed in this proceeding, must show not only that the amendment made in 1907 to section 276 of the Greater New York Charter was intended to make patrolmen thus detailed or assigned to duty lieutenants of police, but, that being a promotion in rank and in pay, that it could be done by the Legislature without violating the state Constitution, which requires that both appointments and promotions in the civil service shall be made according to merit and fitness, to be ascertained, so far as practicable, by examinations which, so far as practicable, shall be competitive. Section 9, art. 5. The respondent claims that this question has been authoritatively decided adversely to appellant by Campbell v. Partridge, as Com'r, etc., 89 App. Div. 497, 85 N. Y. Supp. 853, affirmed 179 N. Y. 530, 71 N. E. 1136. There the patrolman was detailed or assigned to duty in the telegraph bureau on the 2d day of August, 1900, after the enactment of the Greater New York Charter, and on the theory that this was a permanent appointment he contended that by virtue of section 276 of such charter he became a sergeant of police with an increased salary. It was held that this would constitute a promotion and could only be made after a competitive civil service examination.

It is claimed in behalf of appellant that the case at bar is clearly distinguishable from the Campbell Case upon the ground that here the detail or assignment was made before the enactment of the statute under which the claim is made. That is an important distinction, for while it is quite clear that the commissioner of police could not make the promotion without a civil service examination (see, also, People ex rel. Gilhooley v. McAdoo, 108 App. Div. 1, 95 N. Y. Supp. 400, affirmed 185 N. Y. 537, 77 N. E. 1194), it does not follow that the Legislature itself, which has here directly given the promotion, if one it be, to those who then were in office, could not do so upon the theory upon which it must be presumed that this was given, that an examination was either unnecessary or impracticable. Of course, it is competent for the Legislature to amend or repeal expressly or by implication and to override the civil service law and the rules regulating appointments and promotions in the civil service of the state and in the political divisions thereof, provided such legislation does not run counter to the constitutional provisions already cited. There are recent decisions which tend to sustain the authority of the Legislature to reclassify public officials so as to change their grade and salary by

either promoting or reducing them without any civil service examination (Fay et al. v. Partridge, 174 N. Y. 527, 66 N. E. 1107, and Sugden v. Partridge, 174 N. Y. 95, 66 N. E. 655); but we deem it unnecessary to decide whether chapter 160, p. 209, of the Laws of 1907, if intended to apply to and to promote the petitioner, would be constitutional in that regard, for we are of opinion that it was not intended to affect patrolmen detailed or assigned to duty in the telegraph bureau.

By virtue of section 273 of the Greater New York Charter (Laws 1897, p. 93, c. 378), which became of force on the 1st day of January, 1898, all of the police forces then existing within the area of the greater city were consolidated into one department and continued under a single management. Section 276 of the Greater New York Charter, as originally enacted, classified the members of the then existing telegraph forces of the former cities of New York and Brooklyn, as members of the police force by the following provision in the enumeration of such force, to wit:

"The members of the telegraph force as specified in section 277 of this act." Laws 1901, p. 118, c. 466.

The provisions of section 277 to which reference was made in section 276 were as follows:

"The employés of the telegraph force of the police department of the mayor, aldermen and commonalty of the city of New York, who are in office when this act takes effect, shall take the same rank in the police force specified in section two hundred and seventy-six of this act, as the telegraph force of the police department of the city of Brooklyn has under existing laws."

Section 278 made the telegraph operators connected with the police force of the city of Brooklyn members of the police force of the greater city, as enumerated in section 276 of the charter. The original provisions of said section 276, so far as they related to telegraph operators, were re-enacted without amendment in the Revised Charter of 1901 (chapter 466, p. 118, Laws 1901); but by chapter 730, p. 681, of the Laws of the same year, these provisions of the section were amended so as to read as follows:

"The members of the telegraph force specified in section 277 of this act, the telegraph operators to rank as sergeants of police."

These provisions were further amended by said chapter 160, p. 209, of the Laws of 1907, by changing "sergeants" to "lieutenants," and several other changes were made in the section, and the following provisions were added thereto, to wit:

"The rank or grade of inspector of police is hereby abolished and the inspectors of police who hold such office when this act takes effect shall become captains of police with the same salaries and the same rights in respect to the relief pension fund as inspectors of police were entitled to on the first day of February in the year nineteen hundred and seven. Those members of the police force who have heretofore been designated as lieutenants of police, and those members of the police force who have heretofore been designated as roundsmen shall hereafter be designated as sergeants. This change in the designation of ranks or grades shall in no way affect the respective rights as to pay and pension of those members of the police force in those ranks or grades which are hereby renamed."

114 N.Y.S.—45

Section 277 was not amended by chapter 160, p. 209, of the Laws of 1907. The last sentence of the amendment herein quoted indicates that, in respect to the position in question, the Legislature merely intended to amend the section by renaming certain ranks or grades and changing "sergeant" as theretofore employed to "lieutenant." The telegraph operators connected with the police force in the city of Brooklyn were by law made members of the department of police and excise long before the consolidation of the two cities took effect, and they were such at the time of the consolidation (chapter 246, p. 309, Laws 1887; chapter 583, p. 997, tit. 11, § 4, Laws 1888, as amended by chapter 158, p. 182, Laws 1889, and chapters 317 and 695, pp. 612, 1734, Laws 1893); but the telegraph operators connected with the police force in New York were not members of the force at all. They were civilians appointed as special patrolmen to act as telegraph operators (sections 255, 265, 314, and 690 of chapter 410, pp. 67, 69, 82, 195, of the Laws of 1882), and were classified as "employees of the telegraph force of the police department."

It thus appears that the Greater New York Charter, as originally enacted, made the former members of the telegraph forces connected with police departments of the former cities members and a permanent part of the new police force, and that later on they were given the rank of sergeants. We are not informed by the record as to whether any addition to this permanent force of telegraph operators, with the rank of sergeants, has been since made by appointments from a civil service eligible list or otherwise—although it may be inferred, perhaps, that, instead of increasing that branch of the service, patrolmen have been detailed to duty therein from time to time as required—and therefore we refrain from expressing an opinion as to whether the amendments to section 276 of the Greater New York Charter, enacting the provision to the effect that telegraph operators should be members of the force with the rank or title of sergeants, and finally giving them the rank or title of lieutenants, would apply to any other permanent appointment of telegraph operators in the police force that may have been duly made since the enactment of the Greater New York Charter. Suffice it to say that in our opinion the Legislature did not intend that those amendments should relate to patrolmen temporarily detailed or assigned to duty in the telegraph bureau, as was the petitioner.

The original enactment related to the permanent force of telegraph operators, and there is nothing to indicate that the amendments were intended to embrace patrolmen temporarily detailed or assigned to that bureau. Section 292 of the Greater New York Charter (Laws 1901, p. 124, c. 466), authorizes the commissioner to assign the members of the force to duty and to change such assignments from time to time, and section 324 authorizes him to detail patrolmen to duty, other than patrol duty, as may "be necessary and proper to enable the department to exercise the powers and perform the duties and business imposed and required by law." He is thus vested with discretionary authority in this regard. See People ex rel. Daly v. Greene, 91 App. Div. 58, 86 N. Y. Supp. 322, affirmed 178 N. Y. 617, 70 N. E. 1106. The fact that this temporary detail has been allowed to run along for years is of no importance in deciding the question of law

presented by the appeal, nor is it essential that we should express an opinion on the question as to whether the detail could have been lawfully made or continued for such length of time without the consent of the petitioner, for he raised no objection, and that question is not before us.

It follows that the order should be affirmed, with $10 costs and disbursements. All concur.

