PEOPLE ex rel. KARL et al. v. UNITED TRACTION CO.

(Supreme Court, Appellate Division, Third Department.　June 28, 1911.)

1. MANDAMUS (§ 23*)—COMPELLING CONSTRUCTION OF RAILROAD—PETITIONER.

A private person, not interested otherwise than as one of the public, cannot have mandamus to compel a street railroad company to build its road into a certain village as required by its franchise, the grievance which he would attempt to redress being a public and not a private injury, for which only the state may sue.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 55–58; Dec. Dig. § 23.*]

2. MANDAMUS (§ 187*) — CONTROLLING STREET RAILROADS — DISCRETION OF COURT.

Where the Public Service Commission authorized to bring mandamus to compel street railroad companies to perform their duties denied an application to compel a street railroad company to construct its railroad into an unincorporated village, and no appeal was taken to the Appellate Division, which, if the commission refused to act believing it lacked the power, could have sent back the matter to the commission with directions to exercise its discretion and act further under the law as construed by the Appellate Division, a denial by the Special Term of mandamus on the relation of a private citizen to compel the company to construct the road was within its discretion, and the court on appeal would not disturb it.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 436; Dec. Dig. § 187.*]

Betts, J., dissenting.

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of George Karl and another, against the United Traction Company to compel respondent to construct its street railroad to the Village of West Albany, in Albany County. From an order denying the application, relators appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

H. J. Crawford, for appellants.

Patrick C. Dugan, for respondent.

SMITH, P. J.　The Albany Railway was incorporated in 1863 under the general railroad act of 1850 (Laws 1850, c. 140). Its charter designates its route through certain streets in the city of Albany "and the highway to the village of West Albany." West Albany is an unincorporated village, and is separated from Albany by the tracks and yards of the New York Central & Hudson River Railroad Company. In 1863 the common council of the city of Albany passed a resolution giving the Albany Railway permission to construct its line through the streets of Albany to the village of West Albany. In 1872 the Albany Railway did construct a line into West Albany, crossing the tracks of the New York Central by means of a wooden bridge. In 1890 this wooden bridge was replaced by an iron bridge, at which time the tracks were removed from the wooden bridge and were never

replaced, and since which time the terminus of the road has been about 200 feet east of the said bridge. The respondent here succeeds to the rights and obligations of the Albany Railway.

Prior to this application, these relators made application to the Public Service Commission of the Second District to compel the respondent to reconstruct its railway into West Albany. This application was denied by the Public Service Commission, apparently upon the ground that the respondent had no franchise to construct its road into West Albany. Without seeking to review this determination of the Public Service Commission, that proceeding was abandoned and the relators made this application for a mandamus, which has been denied by the order appealed from.

[1] The respondent first contends that this proceeding can be limited only by the people of the state, and does not lie in behalf of an individual relator. In the application of the Brooklyn Elevated Railroad Co., 125 N. Y. 434, 26 N. E. 474, the proceeding was to condemn certain lands. The counsel for the landowner contended that by the act of incorporation the road was to be commenced and completed within certain times, and, in default thereof, it should "forfeit the rights acquired by it under the acts." The court held that a failure to perform the conditions specified in the act did not ipso facto dissolve the corporation, but the corporation was thereby "simply exposed to proceedings on behalf of the state to establish and enforce the forfeiture." The opinion then reads:

"The state which gave the corporation life may take it away. The state which imposed the conditions may waive their performance, and the corporate life may run on until the state by proper proceeding intervenes, and enforces the forfeiture. Until the state does thus intervene, a private individual cannot set up the forfeiture or in any way challenge the corporate existence with its full vitality."

To this statement of the law many authorities are then cited. In Trelford v. Coney Island & Brooklyn Railroad Co., 5 App. Div. 464, 39 N. Y. Supp. 20, the plaintiff sought to restrain the defendant from constructing its road upon Neptune avenue in the city of Brooklyn. It was held in that case that, as plaintiff had no property interest in Neptune avenue, he could not maintain the action; the court saying:

"The plaintiffs, therefore, have no interest in the fact of abandonment except such as is common to all the people. The matter affects public interests only, and the fact can be made the basis of an action against the corporation only when brought by the Attorney General in the name of the people. People v. Albany & Vermont R. R. Co., 24 N. Y. 261 [82 Am. Dec. 295]; Matter of N. Y. Elevated R. R. Co., 70 N. Y. 327."

In Matter of N. Y. Elevated R. R. Co., 70 N. Y. 327, it is held:

"A cause of forfeiture cannot be taken advantage of or enforced against a corporation collaterally or in any other mode than by a direct proceeding against the corporation for that purpose. The government creating the corporation can alone institute the proceedings, and it can waive a forfeiture. This it can do expressly, or by legislative acts recognizing the continued existence of the corporation."

In City of New York v. Bryan, 196 N. Y. 158, 89 N. E. 467, it was held that the legal status of a street railroad franchise should be de-

termined only in a litigation between the people of the state from whom the franchise sprang and the claimants thereto, so that the determination should be binding and conclusive upon everybody. In People of the State ex rel. Lehmaier v. Interurban Street Railway Co., 85 App. Div. 407, 83 N. Y. Supp. 622, the headnote reads:

"A resident and citizen of the state of New York is not entitled to a writ of mandamus requiring a domestic street surface railroad corporation operating connecting lines of street railway in the city of New York to perform its statutory obligation to carry, for a single fare, any person desiring to make a continuous trip over such connecting lines, where it appears that such citizen has never been denied the right which he seeks to enforce, but that the proceeding is instituted on behalf of the public generally, and that under the railroad law, the Railroad Commissioners and the Attorney General have ample power to protect the rights of the public in the event of the refusal of the railroad corporation to perform a duty incumbent upon it."

The opinion in part reads:

"The relator, so far as appears, had been denied no right to which he is entitled. He seeks to enforce in this proceeding the right that the people have to require the defendant to obey the law under which it exercises certain franchises in the city of New York. Whether or not the defendant should comply with these provisions of law is generally a question for the state to determine, and not for an individual, and the statute which imposes this obligation provides the method of its enforcement. By the railroad law (Laws 1890, c. 565, as amended) there is constituted a board of railroad commissioners, which is required to examine railways and keep informed as to their condition and the manner in which they are operated for the security and accommodation of the public, and to enforce a compliance with the provisions of their charters (section 157); and if in the judgment of the board it shall appear that any railroad corporation has violated any constitutional provision or law, or has neglected in any respect to comply with the terms of the law by which it was created, or has refused to comply with the provisions of any law, or with any recommendation of the board, it shall give notice thereof in writing to the corporation, and, if the violation, neglect, or refusal is continued after such notice, the board may forthwith present the matter to the Attorney General, who shall take such proceedings thereon as may be necessary for the protection of the public interests (section 160). Section 162 (as amended by Laws 1892, c. 676) provides that the Supreme Court, at Special Term, shall have power, in its discretion, in all cases of decisions and recommendations of the board which are just and reasonable to compel a compliance therewith by mandamus, subject to an appeal to the General Term and to the Court of Appeals. Ample provision is thus made for the enforcement of the obligations imposed upon the railroad corporations by the Railroad Commissioners and the Attorney General on behalf of the people of the state."

In that case Justice Ingraham proceeds to discuss the right of a private individual to a writ of mandamus to compel the exercise of a public duty, and he distinguishes People ex rel. Pumpysansky v. Keating, 168 N. Y. 390, 61 N. E. 637, which is the case most relied upon in support of relator's right to maintain this proceeding. In People ex rel. N. Y. C., 28 Hun, 543, the proceeding was for mandamus to compel the defendant by mandamus to exercise its franchise. Presiding Justice Davis in writing for the court there said:

"The state in such a case as this has no other adequate remedy. It may proceed, it is true, to annul the corporation, as has been held in many cases where corporations had neglected public duties. But the remedy is not adequate, for it only destroys functions where the public interests require their continued interests and enforcements. It is therefore an election which

of these remedies to pursue. * * * Undoubtedly a sound discretion is vested in its law officer to decide whether the exigency is such as to call for the use of either remedy, as it is ultimately for the court to judge whether the elected remedy should be applied."

Under these authorities, it would seem that this relator had no private injury, no injury that was not common to all the inhabitants of West Albany. The grievance is a public one, to be enforced within the authorities by the people of the state through their constituted authority and by them only. If, as seems to have been held, the state may waive a condition of the franchise, or is vested with a discretion whether or not to proceed, it would seem to follow of necessity that a private individual could not enforce such a condition, especially a private individual who complains of no injury that was not his in common with the people of the whole community.

[2] But this order should be sustained upon another ground. The Public Service Commission is given by statute the general supervision of all railways within their jurisdiction. It has full power of investigation, to ascertain if said railroads are wholly complying with their statutory obligation. It is provided by section 57 (Consol. Laws 1910, c. 48) that, when either commission should be of opinion that a street railroad is failing or omitting to do anything required of it by law, it shall direct its counsel to commence an action or proceeding in the Supreme Court of the state in the name of the commission to have such violations or threatened violations stopped and prevented either by mandamus or injunction. The proceeding before the court is by that section made summary, and the final judgment directed, ordering either a writ of mandamus or a writ of injunction, or both, as may be necessary to effectuate the relief sought. Assuming for the argument that the Attorney General may still bring an action in behalf of the people of the state, there is given to the public an additional security in the guardianship of this Public Service Commission, which may apply for such relief in an action or proceeding wholly independent of the Attorney General. With these two agencies for relief given to the people of West Albany to compel the defendant to exercise its full franchise, even if this proceeding by private relator be authorized, the court might well withhold from him its relief as a matter of discretion until the Public Service Commission had investigated the matter upon proper complaint made, and had determined whether in its discretion the proceeding should have been instituted. This rule might well have been held by the court, even though no application had been made to the Public Service Commission. It should be more rigidly applied, however, where an application has been made to this commission for this same relief and has by the commission been denied. While the order of the Public Service Commission refusing the relief does not state the ground of refusal, it may perhaps be inferred from the opinion written that the refusal was upon the ground of want of power. That determination, however, was subject to review of the Appellate Division, in which case, if the Appellate Division had been of opinion that the defendant's franchise authorized the construction of the road into West Albany, the matter would have

been remitted to the commission to exercise its discretion to act further upon the law as thus construed. Whether, therefore, this order has been refused as matter of law or as matter of discretion, we see no sufficient reason for reversing the conclusion of the learned justice at Special Term. It also becomes unnecessary to construe the defendant's franchise or to determine its right or duty thereunder to extend its tracks into West Albany.

Order affirmed, with costs.

SEWELL, J., concurs. KELLOGG, J., concurs on the ground last stated. HOUGHTON, J., concurs on the first ground stated.

BETTS, J. (dissenting). The petition of the relators alleged: That each of them was a real estate owner, taxpayer, and resident of the village of West Albany, town of Colonie, Albany county, N. Y. That the Albany Railway was incorporated September 5, 1863, under and in pursuance of an act entitled "An act to authorize the formation of railroad corporations and to regulate the same," passed April 2, 1850, being chapter 140 of the laws of that year. The petition farther recited: That the certificate of incorporation filed in the Secretary of State's office provided, among other things, that:

"The said railroad is to be constructed, maintained and operated from a point in State street, in the city of Albany known as 'The Exchange' thence through State street to and across Eagle street, into Washington avenue, the Bowery and the highway to West Albany, in the town of Watervliet."

That the town of Watervliet then is now the town of Colonie. That September 14, 1863, the common council of the city of Albany passed a resolution authorizing the Albany Railway to construct its tracks through the same streets as above referred to to the village of West Albany. That April 14, 1864, the Legislature passed an act ratifying and confirming the said action of the common council and authorizing the Albany Railway to construct, operate, and use the said railroad in, through, and along the said several streets, avenue, and roads (Laws 1864, c. 183). That the so-called village of West Albany is an unincorporated village consisting of about 1,200 inhabitants, and is separated from the city of Albany, a municipal corporation, by the tracks and yards of the New York Central & Hudson River Railroad Company. That there is now an iron bridge extending over the said tracks and yard from the city of Albany to West Albany, which is 960 feet long, of which about 350 feet is in the city of Albany and about 610 feet is in the town of Colonie. That about 1872 the Albany Railway constructed a horse car line from the city of Albany over the said yard and tracks of the New York Central & Hudson River Railroad Company to the said village of West Albany over a wooden bridge then existing at the place now occupied by the said iron bridge, and that said car line was constructed to the distance of about 500 feet in West Albany from the West Albany end of the said bridge, and that said horse car line was maintained by the Albany Railway until the year 1890. That in that year the Albany Railway changed its motive power to electricity, and the horse car line over the bridge

130 N.Y.S.—31

and into the town of Colonie was abandoned by the Albany Railway and discontinued, and the rails and tracks were taken up, and the said car line has never been rebuilt or reconstructed, and that there has been no street railway connection between the city of Albany and the village of West Albany since 1890. That about December 13, 1899, the United Traction Company, the defendant, was organized and formed by consolidating the Albany Railway and two other railroad companies, and by its certificate of incorporation it accepted and received the property of the said Albany Railway (and the other companies) subject to all the charges thereto and the duties and liabilities incurred and assumed by the said corporation. That the discontinuance and abandonment of the street car line as stated was never authorized by the Legislature or consented to by the city of Albany, and was without authority and unlawful. That the present iron bridge is sufficiently strong to sustain the weight of heavily laden trolley cars. That the present end of the defendant's street car line is in the city of Albany about 200 feet from the Albany end of the bridge and 550 feet from the line between the city of Albany and West Albany. That the petitioners and deponents and the other residents of West Albany have no means of getting to the business district of the city of Albany· except by walking over the bridge, and the 200 feet between the bridge and the car line, and that the real estate of petitioners, as well as all other real estate in West Albany, has been decreased in value by the abandonment of said road, and would be enhanced if the defendant was compelled to reconstruct said road. That the United Traction Company has been repeatedly petitioned by deponents and other residents of said village of West Albany to rebuild said line, but that the defendant has neglected and refused to grant such petition. Wherefore they pray that a peremptory writ of mandamus may issue to the defendant commanding it forthwith to reconstruct said car line from the city of Albany to the village of West Albany. Upon that petition a notice of motion was served upon the defendant reciting that an application would be made at a Special Term for a peremptory writ of mandamus directed to the defendant commanding it to forthwith rebuild and reconstruct its street car line from the city of Albany to the village of West Albany, and that, in the event of the refusal to grant a peremptory writ of mandamus, an alternative writ be awarded to the relators.

Upon the return of this notice of motion, the defendant appeared and denied many of the allegations of the petition of deponents. The answering affidavit denies that the defendant had any franchise extending into the village of West Albany, and alleges that the wooden bridge upon which the horse car line was run was taken up, and the bridge was reconstructed by the New York Central & Hudson River Railroad Company, and that said new bridge is not of sufficient strength or capacity for the defendant to operate its street cars thereover, and that the respondent has no right or authority to operate over the said bridge, nor any franchise, grant, or consent fom the local authorities of the town of Colonie, nor from the old town of Watervliet, to construct or operate a railroad in the said village of West

Albany, and did not have a franchise for the construction and opera-
tion of a railroad therein. And the respondent farther alleges in the
affidavit that the line was discontinued and abandoned in a lawful and
proper manner in 1890, and farther recites that the relators had ap-
plied to the Public Service Commission of the State of New York in
and for the Second District upon a petition alleging substantially the
same facts as are submitted here, and asking practically the same re-
lief which was denied, and the proceedings had before the said Pub-
lic Service Commission are attached to and made part of the answer-
ing affidavits by the defendant, together with the opinion of the com-
mission relating to said application.

Thus there was before the Special Term affidavits on the part of
the respondent reciting that it had no franchise to use said new iron
bridge nor to construct nor operate a railroad in the village of West
Albany in the town of Colonie, and, farther, that said iron bridge was
not strong enough to permit it safely to put its railroad track and
trolley cars thereon.

A peremptory writ of mandamus can only issue where the appli-
cant's right to the mandamus depends only upon questions of law.
Code Civ. Proc. § 2070. On an application for a peremptory writ
of mandamus, the allegations of the answering affidavits must be
taken as true. People ex rel. Corrigan v. Mayor, etc., of Brooklyn,
149 N. Y. 215, 43 N. E. 554; People ex rel. Murphy v. Bingham, 130
App. Div. 112, 114 N. Y. Supp. 702. So it would appear that the
motion for a peremptory writ of mandamus was properly denied.

However, the relators asked in their notice of motion that in the
event of the denial of a peremptory writ, an alternative writ of man-
damus might be issued. Upon the issuing of an alternative writ of
mandamus and defendant's return thereto, the principal questions dis-
puted here as to whether the Albany Railway had a right or franchise
extending into the village of West Albany and extending as far as it
originally laid its tracks or not, and whether the new iron bridge was
strong enough for the court to direct (if a proper case for the peti-
tioners was made out), that the defendant reconstruct its tracks over
said bridge into the village of West Albany, town of Colonie, and
whether, if that could not be done, the court could and should give
some relief to the relators and the residents of West Albany by di-
recting the defendant to reconstruct its railroad line to the line be-
tween the city of Albany and the village of West Albany, if that be
practicable, could all be heard and determined. "The general rail-
road act of this state may now be regarded as the general charter of
all such corporations. It authorizes the organization of corporations
for 'the constructing, maintaining and operating' of railroads for 'pub-
lic use' in the conveyance of persons and property." People v. New
York Central & Hudson River Railroad Company, 28 Hun, 550; chap-
ter 140, Laws 1850, § 1. Section 24 of said chapter 140 provides for
carrying the railroad of a company formed under that act (which is
the act under which the Albany Railway was incorporated) over the
track of another railroad; and subdivision 5 of section 28 thereof

would seem to provide that it was not necessary to obtain the consents of owners along the highway to the construction of such railroad at the time this railroad was constructed.

It is, of course, clear that the city of Albany could not grant to the Albany Railway any franchise extending into the then town of Watervliet, now the town of Colonie—that is, in the village of West Albany—so that probably the main purpose of chapter 183 of the Laws of 1864 referred to by the relators relates to the city of Albany. Section 3 of that act, however, may have some bearing upon the question, as that provides:

"The said company are hereby authorized and empowered to charge for, and receive from each passenger carried in their cars for any distance within the bounds of the city of Albany, a sum not exceeding five cents, and for any distance out of such bounds a sum not exceeding ten cents."

This provides that the Albany Railway may charge a sum not exceeding 10 cents for carrying passengers in their cars for any distance out of the bounds of the city of Albany. Whether the Albany Railway at that time went into some other town besides this town of Watervliet is not disclosed here. If not, this section of the statute might be of importance as to how the Albany Railway and the Legislature construed at that time the charter of the Albany Railway as to its West Albany terminus.

A railroad is a great public highway, receiving its grant directly from the Legislature or indirectly through complying with the provisions of the general railroad law in its incorporation. Having laid out its highway and been granted the power of eminent domain which can be given only for a public use, the law rigidly holds it to maintain the road which it originally constructed under its charter, provided that road is within the clear limits of the rights granted to it by its charter. Farmers' Loan & Trust Company v. Henning, as Receiver, 17 Amer. Law Reg. (N. S.) 266, Fed. Cas. No. 4,666; People v. Albany & Vermont Railroad Company, 24 N. Y. 261, 82 Am. Dec. 295; People v. New York Central & Hudson River Railroad Co., 28 Hun, 543; Bloodgood v. Mohawk & Hudson River Railroad Co., 18 Wend. 9, 31 Am. Dec. 313; State v. Hartford & New Haven Railroad Co., 29 Conn. 538. See Paige v. Schenectady Railway Co., 178 N. Y. 102, 70 N. E. 213, where it was held that a receiver could not successfully abandon a portion of the railroad in a public street, nor had the city any power to authorize such abandonment. See People v. Albany & Vermont R. Co., 24 N. Y. 261, 82 Am. Dec. 295, where it is held that:

"A corporation is under a legal obligation to exercise its franchises, and it has not the option to discontinue a part of its road and forfeit its franchise."

See, also, Kent v. Binghamton Railroad Co., 94 App. Div. 522, 88 N. Y. Supp. 34, where it was held that a franchise granted to a railroad company survived (never having been forfeited or canceled by the court or the Legislature) and was still in existence, although the road was incorporated in 1868 and the railroad was not built until after 1894, and cases there cited.

A citizen may apply for a mandamus to enforce a public right. People ex rel. Pumpyansky v. Keating, as Commissioner of the Department of Highways, 168 N. Y. 390–393, 61 N. E. 637, where it is held that the relator is entitled to maintain that proceeding as a citizen, he seeking to enforce a right in which the general public is interested, to wit, that the streets of the city shall remain unobstructed and unincumbered. In People ex rel. Ohlen v. New York, Lake Erie & Western Railroad Co., 22 Hun, 533–540, the relator asked for a mandamus to compel the defendant to receive certain freight offered by him. It was held by the court that the relator had a complete remedy at law for his damages, and the writ was refused; the court holding:

"Where the rights and obligations relied upon by the relator concededly exist, and they are violated as they appear to have been in this case, this action for damages has at all times been considered to be the appropriate remedy. It is complete and adequate for that purpose. And, where that is the case, the law has confined the party to that remedy. An exception exists where a public officer refuses to discharge his duties, and where a corporation suspends the exercise of its franchises."

In People ex rel. Kimball v. Boston & Albany Railroad Co., 70 N. Y. 569, the relator, a private citizen, obtained an order directing a peremptory writ of mandamus to issue commanding the defendant to construct a bridge and carry a turnpike over the railroad in accordance with the provision of an act of the Legislature, and the decision of the lower courts was unanimously affirmed by the Court of Appeals.

In People ex rel. Town of Schaghticoke v. Troy & Boston Railroad Co., 37 How. Prac. 427, affirmed by the Court of Appeals in 1870, it was held that a mandamus was the proper remedy to compel a railroad company in crossing the highway to restore the highway thus crossed to its former state or to such state as to not unnecessarily impair its usefulness. The court held that the company cannot incur a forfeiture at its own pleasure and in utter disregard of the rights of others, and a peremptory writ of mandamus was ordered to issue. People ex rel. Daniel Green, Highway Commissioner, v. Dutchess & Columbia Railroad Co., 58 N. Y. 152, is to the same effect as the last above case.

In People ex rel. Garbutt v. Rochester Railway Co., 14 Hun, 371, affirmed 76 N. Y. 294, it was held, where a railroad company fails to construct fences and cattle guards as required by statute, a writ of mandamus may be properly issued compelling it to construct and maintain the same, and any citizen may apply as a relator for a writ of mandamus for that purpose.

In People ex rel. Frost v. New York Central & Hudson River Railroad Co., 168 N. Y. 187, 61 N. E. 172, a peremptory writ of mandamus had been ordered by the Special Term requiring the defendant to restore certain culverts, and affirmed by the Appellate Division. These decisions were reversed and the proceedings remitted to the Special Term by the Court of Appeals, with directions to issue an alternative writ of mandamus under which the issues could be tried.

People ex rel. Bacon, Commissioner of Highways of the Town of Veteran, v. Northern Central Railway Co., 164 N. Y. 289, 296, 58 N. E. 138, 140, modifies and affirms an order of the Special Term and

Appellate Division directing the issuance of a peremptory writ of mandamus commanding the defendant to restore a highway to such condition as will not change its usefulness, and the court holds:

"The relator, as a private citizen, instituted this proceeding in the name of the people, for the public benefit."

Upon the question of a single private individual with no particular grievance aside from the general public of his vicinity setting in motion the agencies of the state (including finally the courts) to right an alleged public wrong by a railroad company without the intervention of the state or its Attorney General, People of State of New York ex rel. Cohoes Railway Co., Relator, v. Public Service Commission of State of New York, Second District, and Francis P. Lithgow, is informing. The original proceedings were instituted by said Francis P. Lithgow against the relator before said commission, and, succeeding there November 22, 1910, the certiorari brought by the said railway company was decided adversely to the railway company and in favor of Lithgow and the Public Service Commission by this Appellate Division, March, 1911, reported 128 N. Y. Supp. 384, and affirmed by the Court of Appeals May, 1911, reported 202 N. Y. memoranda, 33, 95 N. E. 1137, and nowhere before any court or tribunal was the authority of Lithgow to institute the proceedings questioned.

It also appears in this case that these petitioners, Karl and Espenlaub, were requested at a mass meeting of citizens and taxpayers of the town of Colonie residing in West Albany to make the application herein in behalf of said taxpayers and citizens, and they did so apply in behalf of themselves and all of the other said taxpayers and citizens. The word "to" when used as "to any village" or "to any city" has been held in some jurisdictions to be a word of exclusion, but in this state it has been held to be a word of inclusion. In President, Directors, and Company of Farmers' Turnpike Road v. Coventry, 10 Johns. 389, a turnpike company was empowered, by an act of the Legislature, to make a turnpike road from Troy "to the city of Hudson." It was held by a per curiam opinion, at page 392:

"The plaintiffs by their charter were entitled to carry the road 'to the city of Hudson.' This did not mean that the road was to terminate on arriving at the north bounds of the city, which are the middle of Major Abraham's creek, and several miles from the compact part of the city. The words are to receive a more reasonable interpretation in reference to the subject-matter, and the public object of the grant, which was to open a good road from Troy to the compact part of the city of Hudson. The words 'usque ad' are sometimes to be taken inclusively, according to the subject-matter."

It was therefore held that the turnpike road company had under its charter rightly and legally constructed its road into the city of Hudson.

In Mohawk Bridge Company v. Utica & Schenectady Railroad Co., 6 Paige, 554, it was held that the words "commencing at or near the city of Schenectady" authorized the defendant to commence its railroad "at some point near the city, or at or within the city," and the learned chancellor who wrote the opinion on page 562 quoted with approval the decision in 10 Johns., last above quoted from.

In other jurisdictions it has been also given the same meaning.

"To," as used in a charter authorizing a railroad company to construct its line "to" a city, empowers it to construct the line "into" the city. Waycross Air Line R. Co. v. Offerman & W. R. Co., 109 Ga. 827, 35 S. E. 275; Hazlehurst v. Freeman, 52 Ga. 244, 246.

From these four later quoted decisions it may easily be seen that the court may decide when all the matters are before it in this case that "to the village of West Albany" was meant and intended by the Albany Railway when it framed the words for its own charter to mean "into the village of West Albany," "into the town of Watervliet," and that it so construed its own charter by building its road into West Albany.

We have shown by at least three decisions in this state that a railroad has not lost its right or franchise as against individuals or the public to occupy a street or road because it had abandoned it for some years, or because for 25 years (in one case) it had not constructed its road after its franchise was granted it. It must be that the binding force of this franchise or charter cannot be upon and against the public only and in favor of the railroad company only. If a railroad company may abandon for a time a portion of its road and reconstruct it practically at its will and against opposition, it must be that the public, which originally through a direct act of its Legislature, or through the railroad company, being incorporated under the provisions of the general railroad law, had permitted this occupation of its streets and highways, must have some right to insist that rights granted and acted upon and benefits accrued should not be abandoned at will by the railroad company. It cannot be that the railroad company obtains everything and the public secures nothing from its original charter. If a railroad company can hold its rights to reoccupy a public street or highway after abandonment, it is difficult to understand why the public cannot insist on its reoccupying the road which it originally constructed, if rightly constructed. If a railroad can thus abandon some portion of its route and resume the use of its franchise and route at will, it might easily defeat any new franchise in a public street or highway while not using its own, unless some power exists to compel it to exercise its franchise and restore its abandoned route. I think this court in a proper case by mandamus can compel it so to do. A forfeiture of a railroad company's franchise can only be effected by the Legislature or by the state at the suit of its Attorney General.

There is also a question of ethics, fair dealing, and good morals involved in the matter. Of course, the common council of the city of Albany could grant no rights in the village of West Albany, or the town of Watervliet, yet it may very well be that one of the inducing causes to the common council of the city of Albany to give to the Albany Railway the franchise that it did give was because of some benefits expected in the way of trade and otherwise by the city of Albany from the inhabitants of West Albany and the town of Watervliet by the establishment of this car line, and that the town of Watervliet favored, rather than opposed, the bringing of its citizens into closer relations with the business part of the city of Albany. So that it may be that the court with all the facts before it will conclude that

defendant should exercise its franchise and operate this road to the extent that it did originally and for many years after starting to occupy and operate it.

The relators here are not asking to have the defendant's franchise annulled or forfeited, but are claiming that the citizens of West Albany and the citizens of Albany, as well as the relators, are entitled to have the public highway originally constructed and operated by the Albany Railway restored, continued, and not abandoned, and that they may have a day in court to establish their rights to have such action taken.

I think that the relators are not estopped here because of having unsuccessfully applied to the Public Service Commission for similar or some relief. Its jurisdiction is not exclusive. Exhibit D, attached to the defendant's papers as the action of the Public Service Commission (except the final order dismissing the petitioner's complaint), holds that the "respondent has no franchise to operate in the village of West Albany, granted by that village." Manifestly no franchise could be granted by an unincorporated village. The greater part of that which was held by the commission is not asserted nor claimed by the relators in this proceeding. I do not think that the commission's decision is in any way res adjudicata as to this proceeding.

I think that sufficient was shown by the relators as disclosed by all the papers submitted to the Special Term to have justified that court in granting an alternative writ of mandamus. This court directed the granting of such an alternative writ in Matter of Pratt v. Phelan, 67 App. Div. 349, 73 N. Y. Supp. 823, where both the peremptory and alternative writ had been denied by the Special Term. The same practice was followed in Matter of Jones v. Willcox (in the First Department) 80 App. Div. 167, 80 N. Y. Supp. 420, and see other cases I have cited.

The order of the Special Term herein directly denied the application for a peremptory writ of mandamus, but did not in terms deny an alternative writ of mandamus. Of course, its denial of the relators' motion denied everything that the relators had applied for.

I think that the order of the Special Term should therefore be reversed, and an alternative writ of mandamus granted, with costs and disbursements to the appellants to abide the event.