# Nester v. Pennsylvania Liquor Control Board

*Sydney G. Handler,* of *Douglass & Handler,* for plaintiff.

*Horace A. Segelbaum,* Special Deputy Attorney General, *William M. Rutter,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for defendant.

Fox, P. J., February 19, 1941.—In this matter on September 23, 1940, pursuant to rule 32 of the Rules of Equity Practice, the parties in the above-captioned case filed of record a case stated.

The substance of the case stated is: That plaintiff on May 13, 1940, procured a rule to show cause why an injunction should not be awarded against defendant, to which bill it was agreed no answer should be filed but that the status quo of plaintiff as of May 10, 1940, should be maintained, pending disposition of the case stated, and that the latter should supersede all other pleadings in the matter; plaintiff is an employe of defendant as a clerk in a State liquor store in Allentown; he was employed under the provisions of the Act of November 29, 1933, P. L. 15, as reënacted and amended by the Acts of July 18, 1935, P. L. 1246, and June 16, 1937, P. L. 1762, which legislation is known as the Pennsylvania Liquor Control Act, and more particularly under section 302 thereof; plaintiff secured said position by reason of having taken a competitive examination for such position and as a result of such examination received a rating of number nine on the list of eligibles for employment, from which list he was certified to the said board in the order of his numerical rating for employment and was offered temporary employment by the said board on November 16, 1937, which he accepted; on November 16, 1937, plaintiff was informed that his services would be required for a temporary period; on February 14, 1938, he was furloughed from said service; on March 2, 1938, he was recalled, again being advised that his services would be required for a temporary period, and thus served until September 30, 1939 (19 months), when he was again furloughed; and on November 1, 1939, was again recalled under similar circumstances, namely, being informed that his services would only be temporary; on January 16, 1940, he was again furloughed; and on February 26, 1940, he was recalled, again being advised that his services would be required for a temporary period, and thus served continuously therefrom until the present time; prior to the appointment of plaintiff in the aforesaid manner, the same temporary employment was offered to one Zanger and one Gallagher, both non-veterans, who ranked num-

bers four and six, respectively, on the same eligible list, upon the same terms and conditions as those offered to plaintiff, but which the said Zanger and Gallagher refused to accept; the said Zanger and Gallagher still retain their position on the said list with the numbers four and six, respectively, and are not now employed by defendant, and under the provisions of the Pennsylvania Liquor Control Act of 1937, supra, the said Zanger and Gallagher would first have to be offered permanent positions before one could be offered to plaintiff; by section 4 of the Veterans' Preference Act of June 27, 1939, P. L. 1198, it is provided:

"Whenever any soldier possesses the requisite qualifications and his name appears on any eligible list certified or furnished, as the result of any civil service examination, the appointing power, in making an appointment to a public position, shall give preference to such soldier notwithstanding that his name does not stand highest on the eligible list", which said act became effective on January 1, 1940; on May 1, 1940, defendant employed in a permanent position one Moessmer, whose number on said eligible list was 59, one Merkle, whose number thereon was 85, and one Janoski, whose number on said list was 123, because the said appointees were soldiers under the provisions of the act and entitled to the preference therein set forth; neither of the said employes had ever been previously employed by defendant, nor had they served defendant in any capacity whatsoever prior to their said appointment; because of the cessation of the temporary conditions which had caused temporary employment to be offered to plaintiff on February 26, 1940, and coincidentally with, but not because of, the employment of the said Moessmer, Merkle, and Janoski, plaintiff was notified on May 1, 1940, that he would be furloughed from said service on May 13, 1940; thereupon plaintiff brought his bill in equity, secured his preliminary injunction, and under the agreement of the case stated presently retains his position with defendant.

Argument was heard before the court in banc.

The Acts of November 29, 1933, P. L. 15, July 18, 1935, P. L. 1246, and June 16, 1937, P. L. 1762, so far as concerns the instant case, are substantially the same and relate to the regulation and restraint of the sale, manufacture, possession, etc., of alcoholic and malt or brewed beverages; conferring powers and imposing duties upon the Pennsylvania Liquor Control Board and its agents, and also upon the Department of Public Instruction. In each case the later act is a reënactment and amendment of the former one.

In each of these acts the general powers and duties of the board are set forth, among which is the power to make regulations, but "they are restricted to such regulations as are not inconsistent with the act as it, the board, may deem necessary for the efficient administration of the act".

Section 302 of the Pennsylvania Liquor Control Act of 1937, supra, is the most pertinent one in this case. It relates to the selection of personnel, inter alia, setting forth qualifications of the applicants, the filing of an application, and the transmission of the same by the Liquor Control Board to the Department of Public Instruction, which shall determine whether, under the rules and regulations of the board, the applicant is qualified for the employment he seeks; and if so, the applicant shall be admitted to competitive examination, etc.

The examination papers shall be graded on a basis of 100 percent and less, and the act provides:

"Any person who shall have been a member of the armed forces of the United States during a war or expedition for which the Government of the United States issued a campaign badge, whose separation from said service was honorable, whether by discharge or otherwise, shall receive, in addition to his rating on his examination paper, an additional rating of five percentum, and any such person who shall have been disabled by wounds or in any other manner while engaged in such service . . .

shall submit satisfactory evidence to the board that such disability was received while engaged in such service, shall be rated an additional five percentum over and above the five percentum hereinbefore set forth, and, in either case, the total percentum mark or grade thus obtained shall determine the order of standing of such persons on any list of eligibles."

This section also provides: "Except as hereinafter provided, all offices, places and employments in Pennsylvania Liquor Stores or establishments operated by the board shall be filled by selections from persons, who shall be citizens of the United States, and shall have been legal residents of Pennsylvania for a period of not less than one year before making application, and in the district in which such appointee is to be employed for a period of not less than six months prior to such appointment, . . . The persons receiving the highest grade shall be first appointed, . . . and during their employment, such appointees shall be at all times residents of this Commonwealth.

"C. The tenure of any person holding a position under the provisions of this act shall be during good behavior. . . . .

"Whenever it is necessary, because of lack of work or lack of funds, or whenever it is advisable, in the interests of economy, to reduce the staff of the board, it may lay off employes."

The Veterans' Preference Act of June 27, 1939, P. L. 1198, provides, inter alia:

"Whenever any soldier possesses the requisite qualifications and his name appears on any eligible list certified or furnished, as the result of any civil service examination, the appointing power in making the appointment to a public position, shall give preference to such soldier notwithstanding that his name does not stand highest on the eligible list."

The said act became effective on January 1, 1940.

The questions for our determination are as follows:

1. What appointment did plaintiff receive?

2. Does the Veterans' Preference Act of 1939, supra, effective January 1, 1940, give to the said three veterans a standing ahead of plaintiff and the others, Zanger and Gallagher, who were ahead of plaintiff on the eligible list?

In Cooley on Constitutional Limitations (6th ed.), 239, the distinguished author has said:

"Rules and regulations must be in harmony with the statute; it will be presumed that the state has granted in clear and unequivocable terms all that it intended to grant."

The case of McCartney v. Johnston et al., 326 Pa. 442, was an appeal from the Court of Common Pleas of Allegheny County, and the question involved related to the provisions of the Civil Service Act for Cities of the Second Class which, inter alia, provides for a probationary period of three months; the position in the case was that of plumber in the City of Pittsburgh. The period of the provisional appointment was for three months; the plumber's name remained on the payroll after that period of time, and it was decided by the Supreme Court that "neither negligence nor connivance can cause provisional appointment under civil service act for cities of the second class to ripen into a permanent appointment." In the instant civil service act we do not have the provision for provisional or probationary appointments, but for us the pertinent part of that case is in the statement by the Supreme Court found at page 446, viz:

"So that purpose may be realized, the statutory provisions regulating appointments call for strict compliance with the terms of the acts."

In the case of Sheeran et al. v. City of Philadelphia et al., 21 Dist. R. 651, 654, the court said:

"Nevertheless, the complainants cannot now, for that reason, be removed. They were not responsible for the making or execution of the rule founded in a legal mistake of the Commission and appointing power. Their appointments were duly made pursuant to the Commission's

rules, and their right to their offices vested, of the emoluments of which they cannot be deprived except for the causes and by the method of procedure laid down in the act of 1885. It does not provide that a mistake of law made by the Commission and the appointing power, which has been acquiesced in for almost five years, shall be a just cause for removal. Moreover, by reason of their appointments, they have acquired rights in the police pension fund of which they cannot be deprived by reason of a mistake of law for which they were not responsible. It would be unjust and inequitable to permit a mistake of law of the Commission and appointing power, made in 1907, to effect a removal at the instance of their successors in office in 1912: People ex rel. Mullen v. Sheffield et al., 24 N. Y. App. Div. 214; Truitt v. Philadelphia, 221 Pa. 331."

In 5 R. C. L. 608, 609, it is said: ·

"1. Purpose of Civil Service Laws and Scope of Article.—The civil service laws, a recent development in government, were designed to eradicate the system of making appointments primarily from political considerations with all its attendant evils of inefficiency and extravagance, and in its place to establish a merit system of fitness and efficiency as the basis upon which appointments to the civil service should be made. Such laws substitute for the uncontrolled will of the appointing officer the results of competitive examinations, and require that appointments to office be made from among those who have shown themselves by examination to be best qualified for positions in the civil service, and, as might be supposed, result generally in improvement in the public service from the experience and proficiency acquired through merit, and in a tenure of office which is independent of political favor."

And at page 611, under the heading: "Delegation of Authority to Boards or Commissions.—In exercising its general authority and discretion the legislature has the constitutional right to create a board of civil service com-

missioners and to delegate to it the power to make rules, not inconsistent with existing laws . . . and this is not considered as being a delegation of the power to enact laws or of judicial functions, but merely a delegation of administrative powers and duties."

The case of McGillicuddy et al. v. Civil Service Commission et al., 133 Cal. App. 782, 24 Pac. (2d) 942, is one of much similarity to the instant case. Six of the plaintiffs were trackmen and the seventh was a car repairer in the employ of the City and County of San Francisco, and on April 8, 1932, plaintiffs were removed from their respective positions by defendants, without cause and without an opportunity to be heard. Other persons were immediately employed to fill said positions. Claiming the benefits of the civil service regulations, plaintiffs brought their action for declaratory relief; from a judgment in favor of plaintiffs defendants appealed. The court, at pages 786, 787, said:

"In our opinion the trial court properly treated the positions to which respondents were appointed as 'permanent positions'. As was said in *Powers v. Board of Public Works, supra,* at page 392: '. . . if the position of painter, or granite cutter actually exists in practice with a reasonable degree of continuity and permanency, the courts are justified in treating the position as a permanent one within the meaning of the civil service provisions of the charter. . . .' The facts above stated show that each of the respondents had worked in his position continuously for approximately one year or more before his removal. Respondent Manley had worked continuously in his position for approximately four years with the exception of a short period on leave of absence in 1929. These positions could not be said to be temporary or seasonal. As respondents had worked in such positions in excess of the maximum probationary period fixed by the charter, their appointments were to be 'deemed complete' within the meaning of the old charter. . . .

"Appellants' position with respect to the rule promulgated by the commission is 'that an appointment to and

acceptance of a position designated as "temporary", gives to the appointee, under the rules of the civil service commission, a limited and qualified enjoyment of the same'. We are of the opinion, however, that the commission had no power to adopt a rule whereby positions which were neither temporary in fact nor temporary by the law of their creation, could be designated temporary, thereby preventing the eligibles appointed thereto from acquiring permanent tenure after serving through the probationary period. Such a rule would not serve to 'carry out the purposes' of the civil service provisions of the old charter as contemplated by section 3 of article XIII above set forth, but would tend to defeat said purposes. Under such a rule as interpreted by the commission, the appointing power could absolutely prevent eligibles from acquiring a permanent status merely by following the procedure adopted in the present case. Regardless of the true nature of the position or the length of time the appointee had served, such appointee could be removed at will, according to appellants' theory, without cause and without a hearing merely because he had been appointed to a position designated under the rule as 'temporary'. There is no express authority found in the old charter for such rule and on the contrary we believe that it is violative of the general provisions of the old charter relating to civil service just as the so-called 'one-year rule' was held to be violative of the specific requirements thereof. (*Powers* v. *Board of Public Works, supra; Rodgers* v. *Board of Public Works, supra.*)

"Each of respondents having been regularly appointed from the eligible list to a position which was neither temporary in fact nor temporary by the law of its creation, and having served therein for a period in excess of the maximum probationary period provided in the old charter, had in our opinion acquired civil service rights which were protected by section 142 of the new charter. Respondents were not merely 'emergency employees' as contended by appellants and the trial court correctly declared their rights accordingly."

The case of People ex rel. Davison v. Williams, 213 N. Y. 130, involved the following facts, briefly stated: that the numbers of laborers in the Department of Water Supply, Gas and Electricity of the City of New York was reduced on account of lack of appropriations, one of whom was the relator in the case, who with others was discharged because of an insufficient appropriation. At the same time two other city employes, who were not laborers, but who had been employed as assistant foremen and well drivers, were demoted, and were classified as laborers, and retained as such; had this not been done two more laborers might have been retained, thereby creating a new position at the same time as that of relator was abolished, and it was held that relator was entitled to preference and should be reinstated. The court in its opinion by Cardozo, J., at pages 133, 134, said:

"To make out the right to such a preference, an employee must be able to put his finger upon the precise provision of the statute which secures it to him. This the relator cannot do. We think, in the language of Judge GRAY in *Matter of Breckinridge,* (160 N. Y. 103, 108), that we should not impute to the legislature 'the injustice of intending that some faithful and, possibly, more efficient officer, who happens not to be a veteran, must be discharged to make room for the incumbent of the abolished office.' (See also: *People ex rel. Chappel* v. *Lindenthal,* 173 N. Y. 524; *People ex rel. Ray* v. *McAneny,* 153 App. Div. 884; 209 N. Y. 553.)"

In the instant case plaintiff has put his finger upon the precise provision of the statute establishing his right of preference.

The Pennsylvania Liquor Control Act of 1937, supra, provides for but one class of appointments, to wit, permanent ones. There is no provision within the act for any other type of appointment. The board as early as November 16, 1937, appointed plaintiff to the work of clerk in a liquor store in the City of Allentown. At that time he was informed that the employment was temporary

and he was furloughed on February 14, 1938. He was again recalled on March 2, 1938, and was again informed that the services would be for a temporary period and served continuously from March 2, 1938, until September 30, 1939, when he was again furloughed. He was recalled on November 1, 1939, and served until January 16, 1940, when he was again furloughed. He was recalled on February 26, 1940, and again advised that his services would be required for a temporary period, and has worked continuously since that time.

The act also provides that, in the event of a lack of funds or work, the board has the power and right to lay off employes.

We are of the opinion that the only appointment that the board could make was a permanent one, having the power to lay off so as to relieve it from unnecessary expense.

There are certain maxims in equity, one of them being that "equity looks upon that as done which ought to be done." And as said by Bispham in his Principles of Equity (10th ed.), p. 75: "This is a very important maxim, and one which lies at the foundation of many of the great doctrines in equity."

The fact is that two other eligibles, one Zanger and one Gallagher, were higher on the list of eligibles than plaintiff, the former being numbers 4 and 6 and plaintiff number 9. These former applicants were offered this so-called temporary employment and each declined to accept. Plaintiff, next on the list, accepted and continued services as stated above until on or about May 1, 1940, when he received notice that his services would be terminated on May 13th, and that the three veterans, naming them, had been appointed on May 1st. The said two persons ahead of plaintiff on the eligible list in November 1937 have never, so far as is disclosed, brought any action or taken any steps to maintain their right. It must be presumed that all the parties interested in the case, the board and the applicants and employes, knew the provisions of this

important act of assembly. The first two, so far as we know, may still be qualified or they may not be. The case stated sets forth that they are still on the eligible list, but it gives us neither information as to their qualifications, so far as citizenship is concerned, as provided in the act, nor as to their desire to be employed. They have not requested permission to intervene or shown any concern since November 16, 1937.

There is another maxim in equity which is: *"Vigilantibus non dormientibus aequitas subveniunt,* the meaning of which is sufficiently obvious. It is designed to provoke diligence, to punish laches, and to discourage the assertion of stale claims": Bispham's Principles of Equity, p. 66.

For these reasons we are of the opinion that the appointment of plaintiff made by the board was a permanent one ahead of Zanger and Gallagher, it being the only one it could make under the act.

Our next question is, does the Veterans' Preference Act of 1939, supra, effective January 1, 1940, give to the said three veterans a standing ahead of plaintiff and the others, Zanger and Gallagher?

The case stated does not set forth when the reasons for the three new appointments actually occurred. The appointments were made on May 1, 1940, four months after the effective date of the said Veterans' Preference Act.

In the case of State ex rel. Boyd v. Matson, 155 Minn. 137, 193 N. W. 30, the Supreme Court of Minnesota held that the Soldier's Preference Act "does not authorize the removal of a prior appointee to make a place for a soldier, nor abrogate civil service rules giving precedence to appointees in order of their appointment." And, at page 142, the court said:

"In the present case, the relator appointed in 1918, had a preference right under the civil service laws superior to the preference right of the soldiers who applied for employment in 1921; that is, he could not be removed to make a place for one of them. Their preference right at

the time they applied was merely a right to be preferred over other applicants in appointments to be made then or thereafter. The statute undoubtedly gives them a right to be retained in service in preference to nonsoldiers appointed at the same time, or who do not take precedence over them under the civil service rules; but we find nothing in the act indicating that the legislature intended to do away with the civil service rules, nor that the seniority rights created by such rules shall give way to the preference rights given by the act. Both are created by legislative authority, and as both can stand together and be given a fair and reasonable operation, effect must be given to both. The civil service rules provide, in effect, that the several positions in question, instead of standing on a parity, shall take precedence in the order in which the holders of the positions were appointed. The soldier's preference act provides that where, but for his military service, a soldier and other applicants or appointees would stand on a parity, the soldier shall take precedence. Reducing the force from 16 to 11, is in effect abolishing 5 positions. By force of the civil service regulations, the positions so abolished were those held by the 5 operators last appointed. The relator was not one of these 5 and his position was not one of those abolished. By force of the soldier's preference act, the positions held by the soldiers could not be abolished so long as a position held by a nonsoldier, appointed at the same time or later, was continued. This accords to the soldiers the same preference right they had when they made their original applications —a right to be preferred over all others not in the service before they applied—but not a right to have old employes removed to make places for them. We reach the same conclusion reached by the learned trial court, and the order appealed from is affirmed."

In the case of Swantush v. City of Detroit, 257 Mich. 389, 241 N. W. 265, the court, inter alia, said (p. 395):

"No one would seriously contend that the veterans' preference act requires the discharge of nonveteran em-

ployees so that vacancies might be created to permit the initial appointment or employment of qualified veteran applicants. But that is exactly the result that would be accomplished in times of extensive lay-offs if the contention of the intervening appellants were to be sustained. The nonveteran would be supplanted by the veteran regardless of the fact that the nonveteran might have been in the service long before the appointment of the veteran. We are satisfied because of the obvious injustice that such a result was not contemplated by the legislature when the statute was enacted. The statute does not so provide in express terms or by reasonable implication. We think the statute covers priority in the original appointment and employment only as contradistinguished from the order in which employees shall be laid off or the order in which they shall be reinstated. Where so construed, there is no conflict between the statute and the civil service rule which intervening appellants assail."

In the case of Deth v. Castimore, 154 Misc. 906, 278 N. Y. Supp. 587, it is said (p. 907) :

"The policy of the law is that after a person has passed a civil service examination, has been certified as eligible by the civil service commission, and has been appointed, he acquires a title to the position and can be removed only in a manner provided by law. *(Matter of Lazenby v. Municipal Civil Service Commission of City of Elmira*, 116 App. Div. 135; affd., 188 N. Y. 588.)"

In the case of Kassarich v. Unemployment Compensation Board of Review, 139 Pa. Superior Ct. 599, 604, 605, it is said:

"The Unemployment Compensation Law imposes two wholly separate and distinct functions or duties on the Board, relative to the Civil Service section or division of Article II of the statute relating to the administration of the Act.

"(1) The first is preliminary in character and relates to the *selection* of the employees who are to administer the Act . . . and to prepare and file a list of eligibles,

from which names shall be certified by it to the Secretary, when requested, by him.

"(2) The second is appellate in character and imposes on the Board the authority to hear and determine appeals taken by civil service employees who were appointed to positions under the Act and have been given notice of dismissal, suspension or furlough (sec. 208(p)).

"Under the first or preliminary division, its duties are ended, so far as the selection of civil service employees is concerned, when, after an applicant has been examined and placed on the list of eligibles, he is certified to the Secretary and appointed to a position in the civil service. Any errors in the selection of the list of eligibles, not arising from fraud, misrepresentation or misconduct, is cured by the appointment, and neither the Board, which certified him, nor a subsequent Board, is given power or authority to revoke the certification, or order his dismissal. Its authority in this respect is then ended. Its duties after the appointment of the civil service employee are wholly appellate in character and are limited to the hearing and decision of appeals by employees who have been given notice of dismissal, suspension or furlough.

"It follows that whether or not the Board, which examined this appellant for the office of Senior Interviewer and certified him on the list of eligibles, rightly construed the rules and regulations prescribed by the then Secretary as to the qualifications to be possessed by persons desiring employment in the various classes and grades of employment established by the Secretary, its act in certifying him on the list of eligibles could not be reviewed, reconsidered or revoked and his name removed from the list in the absence of fraud, misrepresentation, or misconduct—which is not here alleged—after his appointment to a civil service position, and his retention therein beyond the probationary period of nine months, either by the Board which had certified the list or by a subsequent Board; and the present Board had no power to direct the Secretary to dismiss him from his position, because it was

of opinion that his experience, as set forth in his application, did not meet the minimum requirements prescribed by the Secretary.

"The authority of the Secretary to dismiss a permanent civil service employee is restricted to the grounds enumerated in sections 208(o) and (s), none of which is charged against this appellant." See also People ex rel. Weeks v. Ward, 179 App. Div. 905, 162 N. Y. Supp. 744, People ex rel. Shields v. Scannell, 48 App. Div. 69, 72, 62 N. Y. Supp. 682, 684, and Matter of Jones v. Willcox, 80 App. Div. 167, 80 N. Y. Supp. 420, 424.

We also have in the said act what is called the seniority right. The Pennsylvania Liquor Control Act of 1937, supra, in section 302, provides:

". . . when any position is newly created or otherwise to be filled, employes who have been previously placed on leave of absence because of the abolishment or temporary discontinuance of a position or other reduction in personnel because of lack of work, lack of funds or in the interest of economy, such employes shall be recalled to service, within their proper classification and in the order of their rank, before any appointment can be made from a list created and certified at a later date than the list from which the furloughed employe was originally appointed."

In the case of People ex rel. Hansen v. Collins, 351 Ill. 551, 184 N. E. 641, the court said (p. 555):

". . . There is neither statutory provision nor implication giving a preference to veterans over other employees who are strangers to the military or naval service, either to retain employment whenever the necessity for temporary discharges from work arises, or to be recalled before such other employees whenever the necessity for temporary releases from employment ceases."

". . . If the legislature had intended to give a preference to veterans not only to obtain employment in the civil service, but also to retain it as against all other employees, without regard to their seniority in service, a

provision to that effect would have been incorporated in the statute. This omission is indicative of the legislative intention not to confer the preference of retention in employment claimed by the appellant. The judicial department has no power by interpretation to incorporate into a statute a provision which it does not contain. . . ."

The same question was considered in the case of Bacon v. Huie, 170 Misc. 726, 10 N. Y. Supp. (2d) 965, and the court, at page 728, said:

"It should be observed that this is not a case of an original appointment from an eligible list but that of an appointment from a preferred list under section 31. Consequently, a person whose name is certified from the latter list, even though it may be the only one entered thereon, must receive preference over new eligibles or temporary appointees. [Citing a case and holding it inapplicable.] While it [the cited case] may apply to a policy of keeping vacancies open in the interest of economy or for other cogent reasons, it has no application where the office is actually occupied". In the latter case a person on the preferred eligible list has preference even over a war veteran lower on the same list because his seniority and his right under section 31 are deemed to override the right of the war veteran under section 22 of the Civil Service Law.

In the case stated, paragraph 14 reads as follows:

"14. Because of the cessation of the temporary conditions which had caused temporary employment to be offered to plaintiff on February 26, 1940, and coincidentally with but not because of the employment of W. J. Moessmer, Jr., Myron Merkle, and Frank J. Janoski, plaintiff was notified on May 1, 1940, that he would be furloughed from service effective as of May 13, 1940."

As was argued before the court in banc, and as we understand this paragraph, it means that plaintiff was employed because of a temporary condition created by the increase in volume of business, and that this increase in volume of business had ceased. In the meantime vacancies

occurred in what the board had termed its "permanent" store staff. Plaintiff was laid off because of the cessation of the increase in the volume of business. At the same time vacancies in the permanent staff existed. Thus, coincidentally with plaintiff's lay-off and to fill such vacancies, Moessmer, Merkle, and Janoski were appointed. Thus construing the meaning of this paragraph, we are of opinion that it cannot affect the right of this plaintiff to his permanent employment under the act, which we hold he had received.

On October 8, 1940, the parties filed a stipulation as to amendment of the case stated, which reads as follows:

"It is hereby stipulated by and between counsel for the parties hereto that the case stated heretofore filed in the above-stated case be amended in the following particulars:

"1. Paragraph 14 in said case stated shall be deleted and in lieu thereof the following shall be inserted:

"14. Because of the cessation of the conditions which had caused temporary employment to be offered to plaintiff on February 26, 1940, plaintiff was notified on May 1, 1940, that he would be furloughed from service effective as of May 13, 1940. Coincidentally with the furlough of plaintiff and because of three vacancies in the permanent clerical staff of the said stores, W. J. Moessmer, Jr., Myron M. Merkle, and Frank J. Janoski were employed to fill said permanent positions.

"2. That an additional paragraph numbered 16 shall be added as follows:

"16. It is agreed that the case of Franklin E. Dreher, entered in the Court of Common Pleas of Dauphin County, Sitting in Equity to #1526 Equity Docket, and Gerald B. Jacobs, entered in said court to #1537 Equity Docket shall be governed by the decision and order in this case.

"Dated September 30, 1940."

The only change in paragraph 14 aside from the change in order of the language is the elimination of the word "not" following the language "coincidentally with the

furlough of the plaintiff and". We are unable to see what difference it makes in respect to the right of plaintiff upon which we shall hereafter decide.

As to the new paragraph 16, we know nothing of the matters of the said Dreher and Jacobs mentioned therein as plaintiffs in equity suits and are of the opinion that the determination of the rights of those parties should be made by the board and not by us. The board has knowledge of the facts and so knowing may apply the law. Besides, the record should be made in the respective numbered cases.

(It seems to present two cases similar to this of plaintiff. This, as we have endeavored to point out thus far, should not be.)

We are of the opinion that section 302 of the Pennsylvania Liquor Control Act and the Veterans' Preference Act relate to the same class of persons, namely, persons on the eligible list for appointment to a position with the Liquor Control Board. These two acts therefore are in pari materia.

In the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 62, 46 PS §562, it is said:

"Laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things." Being laws in pari materia, they are to be construed together, and if possible, as one law. The two acts can, without difficulty, be construed together. The Pennsylvania Liquor Control Act, supra, at section 302, prescribes that "the persons receiving the highest grade shall be first appointed, and so on." The Veterans' Preference Act, supra, merely modifies this provision, and when the acts are read together the net result of the two laws is that the persons receiving the highest grade shall be first appointed except where there are qualified veterans on the eligible list, who are to be appointed first, notwithstanding their position on the eligible list. On May 1, 1940, there were three vacancies in the clerical staff of the liquor store where plaintiff was employed.

The board considered these vacancies as the subject of new and distinct appointments and thus subject to the Veterans' Preference Act, even though such positions were identical in every respect.

We are also of the opinion that the Veterans' Preference Act is not retrospective prior to January 1, 1940, and if vacancies occurred before that date no veterans' preference would exist, but if after that date the appointment of eligible veterans would supersede all others, except plaintiff and others in situations similar to plaintiff's, having previously been appointed. We cannot tell when the vacancies occurred; the board has that information.

## Decree

And now, February 19, 1941, upon due consideration, it is hereby ordered, adjudged, and decreed that plaintiff, Raymond Nester, had permanent employment prior to the effective date, to wit, January 1, 1940, of the Veterans' Preference Act of June 27, 1939, P. L. 1198, and cannot be superseded by a veteran, but as to all vacancies occurring after the said date, to wit, January 1, 1940, the said Veterans' Preference Act is in force and the veterans are given preference over employment of all others not permanently employed prior to January 1, 1940.

Plaintiff has asked us to pass upon the following points, all of which we have answered and filed of record:

(*a*) As between two eligibles (one of whom is a veteran and the other a non-veteran) for the same position, neither of whom had theretofore been appointed or employed by the board, the veteran shall be preferred for appointment or employment. Affirmed.

(*b*) As between two eligibles (one of whom is a veteran and the other a non-veteran), where the non-veteran had theretofore been appointed or employed by the board under the civil service provisions of the act, he shall be preferred for appointment or employment over the veteran, and the Veterans' Preference Act is inapplicable to such a situation. Affirmed.

(*c*) The preference created by the Veterans' Preference Act applies only as between persons of equal status, namely as between persons whose only right to appointment or employment is based upon the fact that they are on the eligible list. It has no application as between a person whose right depends solely upon the fact that he is on the eligible list, and another person whose right exists not only because he is on the eligible list, but also because he has been employed by and has served the board in the same capacity required under the appointment. Affirmed.

(*d*) To prefer the veteran on the eligible list over the non-veteran on the eligible list who has served the board and is experienced would be destructive of the entire object and purpose of the civil service provisions of the law for it would permit veterans, who achieve the eligible list by having points added to their rating and whose rank on such list is very low, to be preferred and in fact displace non-veterans of high ranking on the eligible list, without benefit of any points added, and with years of experience in the board's service. This would result in a manifest injustice to the non-veteran, would create a burden upon the public service with the consequent penalty to the taxpayer and would thwart the legislative intent inherent in the civil service law. Affirmed.

Defendant has submitted the following questions, both of which we have answered and filed of record:

The preliminary question involved is whether plaintiff, Raymond Nester, is entitled to be appointed to a position by and with the Pennsylvania Liquor Control Board before W. J. Moessmer, Jr., Myron M. Merkle, and Frank J. Janoski. Answer, Yes.

The subsidiary question is, provided the preliminary question aforesaid is answered in the affirmative, whether plaintiff, Raymond Nester, is entitled to be appointed to a position by and with the Pennsylvania Liquor Control Board before George O. Zanger and Joseph A. Gallagher. Answer, Yes.